NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

MERCHANTS POLICE, INC.,
Respondent.

No. 13869.

United States Court of Appeals
Seventh Circuit.

Feb. 11, 1963.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Vivian Asplund, Attorney, N. L. R. B., Washington, D. C., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Allison W. Brown, Jr., Attorney, N. L. R. B., for petitioner.

O. S. Hoebreckx and Robertson, Hoebreckx & Davis, Milwaukee, Wis., for respondent.

Before CASTLE, KILEY and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

This case is before the Court pursuant to Section 10(e) of the National Labor

Relations Act,[1] as amended (29 U.S.C.A. § 160(e)), on the petition of the National Labor Relations Board for enforcement of its order against Merchants Police, Inc., respondent.

The Board found that respondent violated Section 8(a) (1) of the Act[2] by interrogating employees concerning their union activities, by creating the impression that union meetings were under scrutiny and by implying that, if employees joined the Union,[3] they would be discharged. The Board also found that respondent violated Sections 8(a) (3)[4] and (1) of the Act by discharging employee Gerald Pashek and by transferring and demoting Erwin Just because of their union activities. The Board's order directs respondent to cease and desist from the unfair labor practices found and from in any other manner interfering with, restraining or coercing its employees in the exercise of rights guaranteed them under the Act. Affirmatively, the order requires respondent to offer Pashek and Just immediate and full reinstatement to their jobs, or to substantially equivalent positions, and to make them whole with backpay. It requires respondent to post the usual notices.

The contested issues substantially as stated by the parties are:

(1) Whether substantial evidence on the record as a whole supports the Board's findings that respondent (a) violated § 8(a) (3) and (1) of the Act by discriminating against employees Just and Pashek; and (b) interfered with, restrained and coerced employees in violation of § 8 (a) (1).

(2) Whether, if the Board's finding of discrimination against Just and Pashek is so supported by the record, respondent's post-charge but precomplaint offers to retransfer Just and reemploy Pashek preclude the

Board from requiring further offers of reinstatement, and toll any liability for backpay from the respective date of each of said offers.

The record discloses the respondent is engaged in the business of providing plant and store security services at Milwaukee, Wisconsin. In mid-August 1961, the Union began organizing respondent's guard force of about 350 employees. In July, Pashek, who had been hired in June, was assigned as a guard at the 12th Street Cutler-Hammer plant. On two occasions he distributed union application cards at the entrance to the plant when respondent's guards reported to, and left, work. Just, also stationed at the Cutler-Hammer plant, joined the Union during this period. Edward Swanson, respondent's vice-president in charge of operations, upon learning of the Union's organizational activities visited the Cutler-Hammer plant on August 23rd where he questioned Just as to his Union membership and asked him if others had joined. Just acknowledged his Union membership and stated that most of the 30 guards at Cutler-Hammer had joined. Pashek was discharged on August 24th; he was told by respondent's dispatcher, who advised him of the discharge, that the reason for his discharge was his violation of the respondent's rules concerning being in uniform while on duty. When Swanson had called at the plant to question Just he had found Pashek not wearing his badge, his cap, or a tie. Earlier he had worn other than the regulation trousers for approximately two weeks. On August 28th, Just was transferred to guard duty at a shopping center; at the same time he was demoted from his rank of sergeant, and his pay reduced.

On October 3, 1961, a Union meeting was held which was attended by most of respondent's Cutler-Hammer guards. On October 5th, Swanson con-

---

1. All references herein to the "Act" are to the National Labor Relations Act, as amended. 29 U.S.C.A. § 151 et seq.

2. 29 U.S.C.A. § 158(a) (1).

3. Local 555, United Plant Guard Workers of America.

4. 29 U.S.C.A. § 158(a) (3).

vened a meeting of those guards in his office. He advised them that he knew who had attended the Union meeting and who had signed up with the Union; that respondent's profit margin at Cutler-Hammer was narrow and if the Union came in respondent might lose this contract and some employees might lose their jobs. The admonition that "some" might lose their jobs coupled with respondent's statement that it knew "who" were attending union meetings, and "who" had signed up with the union warranted a reasonable inference that union membership or adherence would have a bearing on the selection of those who might have to be dismissed if the Cutler-Hammer contract was lost. This statement, viewed in connection with the earlier interrogation of Just, constituted unlawful interference and coercion within the meaning of § 8(a) (1). N. L. R. B. v. Kohler Company, 7 Cir., 220 F.2d 3, 8; N. L. R. B. v. Jackson Press, Inc., 7 Cir., 201 F.2d 541, 545; N. L. R. B. v. Deena Products Co., 7 Cir., 195 F.2d 330, 332.

It is conceded that the demotion of Just was because of his membership in the Union. Swanson testified that, "[W]e didn't feel that he should be a part of any union activity as long as he was a supervisor". In justification of its action respondent contends that Just's position as a "working" sergeant made him a supervisor as defined by § 2(11) of the Act,[5] or if it did not, Swanson's mistaken belief that it did, serves to immunize the demotion in rank and pay from the statutory ban because of a lack of a discriminatory motive or intent. It further urges that, in any event, its January 2, 1962, offer, made after the filing of the charges with the Board, to transfer Just back to the Cutler-Hammer plant precluded the Board from ordering that an offer of reinstatement be made or requiring backpay for any period subsequent to the January offer.

■■ Respondent has two types of sergeants—working sergeants and roving sergeants. The working sergeants received 15 cents more per hour than the guards but like the guards are assigned to a particular plant. Just was a working sergeant. As such, he was assigned to the Cutler-Hammer plant. It is the responsibility of the working sergeant to make the rounds of the premises where he is assigned, visit the locations where guards are on duty to see if things are running smoothly, and at the end of the workshift to take charge of the timeclocks, the keys, and the reports turned in by the guards. Our study of the record, considered as a whole, convinces us that the finding and conclusion that Just did not occupy a supervisory position within the purview of § 2(11) is supported by substantial evidence. It is apparent that Just had no power of direction or supervision over the work of the guards requiring the use of independent judgment. In this connection he could but turn in a report of any dereliction of duty. Neither did he have authority to hire, discipline, discharge or effectively recommend such action. Such working sergeants merely have greater responsibilities than their fellow employees, the guards, and some additional duties. And where, as here, the employer's conduct causes an employee to suffer adversely as the result of his espousal of or adherence to a union, such conduct has the inherent effect of discouraging union activity and carries with it the implication of the required intent. Specific evidence of intent is not an indispensible element of proof of violation of § 8(a) (3) and an employer's protestation, in such circumstances, that he did not intend to discourage union adherence or activity is unavailing. Cf.

5. 29 U.S.C.A. § 152(11) provides: "The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

Radio Officers' Union, etc. v. N. L. R. B., 347 U.S. 17, 45, 74 S.Ct. 323, 98 L.Ed. 455; Local 357, International Brotherhood of Teamsters, etc. v. N. L. R. B., 365 U.S. 667, 675, 81 S.Ct. 83, 85, 6 L.Ed.2d 11. Moreover, respondent's claim of mistaken belief is to be evaluated in the setting in which it is asserted and in the light of what factual basis may exist therefor. Neither factor here evidences lack of support for the Board's conclusion.

 It is admitted that Just expressed disinterest when Swanson, on January 2, 1962, inquired of him as to whether he would like to go back to Cutler-Hammer, and although there is testimony that Swanson spoke in terms of the former "job", it further appears that when Just sought to confirm this the next day by a letter of inquiry as to rank and pay he received no reply. Under the circumstances the offer of re-transfer to Cutler-Hammer cannot be accorded the effect for which respondent contends; the Board's conclusion that it was not an unconditional offer of reinstatement as a sergeant on the Cutler-Hammer detail has ample factual basis.

There was credited testimony that the day after Pashek's discharge, Reynolds, one of the supervisory roving sergeants identified with management, in a conversation with one of the guards about the Union's activities stated, "We checked out Pashek. We fired him * * *. We wouldn't let him in the plant tonight". In view of this, respondent's contention that Pashek was discharged solely for cause—his failure to in all respects comply with rules concerning the wearing of the uniform and badge while on duty and his admission of an unauthorized person [6] to the plant on one occasion— did not, on the record, preclude the Board from drawing the inference that it was Pashek's union activity which was the reason for his dismissal. And the later offer to reemploy him at a different location, while not such an offer as to bar the

Board from ordering an offer of reinstatement and backpay, does support a conclusion that the respondent did not regard Pashek's shortcomings as serious derelictions of duty.

The Board's request for a decree enforcing its order is granted.

Enforcement ordered.

---

6. Pashek permitted Swanson to enter the plant around mid-night on August 23rd to look for Just, who was making his rounds.