**JOURNEYMEN PLASTERERS' PRO-
TECTIVE AND BENEVOLENT SOCI-
ETY OF CHICAGO, LOCAL NO. 5, Pe-
titioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 14552.

United States Court of Appeals
Seventh Circuit.

Feb. 16, 1965.

540

Richard W. Burke, William T. Kirby, Chicago, Ill., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Lawrence M. Joseph, Atty., N. L. R. B., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Allison W. Brown, Jr., Atty., N. L. R. B., Washington, D. C., for respondent.

Before SCHNACKENBERG and CASTLE, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge.

Pursuant to § 10(f) of the National Labor Relations Act, as amended, Title 29 U.S.C.A. § 151 et seq., Journeymen Plasterers' Protective and Benevolent Society of Chicago, Local No. 5, hereinafter called the "Union," petitions this court to review and set aside an order of the National Labor Relations Board issued on February 10, 1964. The Board's decision and order are reported at 145 N.L.R.B. No. 152. The Board, by a three-member panel, adopted the substance of findings and conclusions of the trial examiner in the case that the Union had committed unfair labor practices in causing an employer discriminatorily to discharge an employee in violation of § 8 (b) (2) and (1) (A) of the Act, Title 29 U.S.C.A. § 158(b) (2) and (1) (A). In its answer to the petition, the Board requests enforcement of its remedial order.

The record discloses that the employee, John J. Spinelli, had been an apprentice plasterer from 1931 to 1935, and a journeyman plasterer thereafter until 1952. During this time he was a member of the Union. He relinquished his membership in 1952 to become a plastering contractor, operating as the Spinelli Plastering Company. Spinelli, personally, and the company entered into bankruptcy in 1959. At this time the Spinelli Plastering Company owed the Union the amount of $1,187.15 which represented dues deducted from the wages and was listed as owing to the Union in the corporate bankruptcy schedules.

On August 18, 1961, Spinelli, by letter, applied for reinstatement of his membership in the Union and was thereafter invited to appear before its executive board on October 10, 1961. At this meeting Ellsworth McMasters, the Union's president, informed Spinelli that he would have to agree to pay the Union the sum of $1,187.15 as a condition to obtaining membership. On October 24, 1961, Spinelli, who had consulted with his attorney, signed a statement acknowledging an indebtedness in that amount to the Union and agreeing to discharge this obligation by payment to the Union of $5 for each day that he worked at the plastering trade, with $1 to be applied toward his initiation fee and $4 toward his indebtedness, until both amounts were paid in full. The constitution and by-laws of the Union provide that installment payments of the initiation fee may, in the discretion of the president, be paid at the rate of $4 per working day until paid in full.

When Spinelli inquired about his membership status in November, McMasters told him that he would have to make a down payment of $187 before he could go to work and that he would be charged an initiation fee of $250. The initiation fee on reinstatement of members having twenty-year membership when dropped is stated to be $125 in the Union's constitution and by-laws.

In January 1962, Spinelli informed McMasters that he had some job offers and was told that he could not work as a foreman or superintendent. On or about February 5, 1962, Spinelli began working for the John P. Phillips Plastering Company whose collective bargaining agreement with the Union included a union shop provision.

In February 1962, Spinelli's attorney arranged a meeting with the Union to clarify his membership status. Spinelli was again informed that he would have to make a down payment of $187. Spinelli's attorney offered to lend him this sum and in fact mailed the Union his personal check in the amount of $187.15. On February 16, 1962, Spinelli was informed by letter, written by the Union's attorney, that he would be granted membership as a journeyman plasterer when the initiation fee and the $1,000 balance on the debt had been paid in full. The Union's constitution and by-laws provide that applicants, paying their initiation fee on an installment basis, must make a deposit of at least twenty per cent of the fee, shall obtain a record of payment book from the Union office, and shall continue to make payments as agreed to weekly until the fee is paid in full when they shall be initiated. On lapse of payment over ninety days, payments already

made on the initiation fee shall be forfeited.

McMasters learned of Spinelli's employment with Phillips at the end of February 1962. Early in April, Phillips received notice to appear before the executive board of the Union to answer charges of failing to report new men he had hired, in violation of the union security provision of Article III(c) of the Joint Agreement between the plastering contractors and the Union to which Phillips was a party. Spinelli was among the men Phillips had hired without notifying the Union. According to the Joint Agreement, notice of hiring is required so that the Union may advise the newly-hired employee of the union security provision and examine into his qualifications and experience as a journeyman plasterer.

Similar charges have on occasion been filed against other contractors. However, Phillips had never complied with the reporting requirement and had not previously been charged with this violation. McMasters knew of at least one instance in which Phillips had failed to report the hiring of some fifteen men.

On being notified that he was to appear before the Board on April 5, 1962, Phillips immediately hastened to the meeting. On this occasion he was informed that Spinelli did not have a permit to work as a journeyman, his permit having been forfeited for something on which Spinelli "did not follow through." He could not recall what Spinelli had failed to do. He was also told that as long as Spinelli did "leg work" for him he could keep him in his employ. After the meeting, Phillips told Spinelli that he was not to give instructions to the men. Phillips knew that since Spinelli could not be a journeyman plasterer, he could not work as a foreman or direct the activities of the plasterers.

Phillips had intended that Spinelli's duties would include half-time production work and the remainder in leg work, such as conveying Phillips' instructions to the men. The actual duties performed by Spinelli included driving a truck, distributing paychecks to the men, checking materials for jobs, keeping time records, hiring and discharging men on instructions from Phillips, and delivering Phillips' instructions to the men. He did no plastering and was paid a journeyman's wage.

Because of the infraction of the rules to which Phillips pleaded guilty before the Union, an outside steward was imposed on him for ninety working days. The steward, John Owens, began working for Phillips on April 15, 1962. Phillips had complaints concerning the quality of Owens' work and so informed McMasters. There were disputes between Owens and Spinelli concerning Spinelli's handling of paychecks for the men. The presence of Phillips and of McMasters was required at the scene of such an incident late in May 1962. McMasters found that Spinelli's conduct had been proper on these occasions. Following the latter incident, Phillips told Spinelli that he would have to discharge him. Spinelli's employment was terminated on June 8, 1962.

While working for Phillips, Spinelli had arranged for a weekly, not daily, deduction of $5 to be applied on the debt he assumed and on his initiation fee according to the allocation of his agreement with the Union. After eight such deductions were taken from his wages, Spinelli withdrew this money. No other deductions were withheld from his wages, and Spinelli made no other payments toward his debt or initiation fee.

After termination of Spinelli's employment, Phillips asked to be relieved of the steward because of slackness of work. His request was granted prior to the expiration of the ninety-day period originally imposed. Phillips rehired Owens about one month prior to the hearing of this case. The check for $187.15 sent to the Union by Spinelli's attorney was not cashed or deposited. It was returned to the attorney on June 4, 1962, with the explanation that Spinelli had failed to abide by the terms of his agreement.

In his testimony Phillips gave a number of reasons for discharging Spinelli.

There was financial pressure; he felt he was not getting enough help for the cost involved. Spinelli had difficulty in keeping time records and adapting into his plastering operations. There was pressure from many sources. There were eruptions on the jobs. Two foremen left Phillips. The men objected to working with him because of his overbearing ways. There was trouble with one latherer who objected to being squeezed on some pricing and with the latherers union because of an infraction of that union's agreement. At least one materialman inquired as to the person with whom he would be dealing and then agreed to remain as a supplier for Phillips. Additionally, Phillips testified that he was cautioned by others when they heard of his employment of Spinelli who was not liked "by most people."

Phillips had been called directly as a witness for General Counsel. For the purpose of refreshing his memory, he was shown a statement signed by him after he gave notice to Spinelli following the altercation with the Union steward, the content of which statement was contrary to the import of his testimony on the hearing respecting the reasons for which he discharged Spinelli. The statement reads as follows: "In order to get the pressure off me from the union, I fired John Spinelli about June 8, 1962." Phillips recalled signing the statement which had been prepared by Spinelli and his attorney.

Phillips had been interviewed by General Counsel about one year prior to the hearing. He may have been shown the signed statement on that occasion. He indicated at that interview that his reason for discharging Spinelli was the financial pressure of having Owens and Spinelli on his payroll. He was again interviewed five or six days before the hearing and informed General Counsel of the answers he would give on direct examination. Phillips could not recall whether or not he had been asked at this time whether his signed statement was true.

The trial examiner permitted interrogation of Phillips as a hostile witness. Phillips then testified that he believed the content of his signed statement that he discharged Spinelli because of pressure from the Union to have been true when he signed it; that his testimony on the trial was "truer"; and that he signed the statement to avoid hurting Spinelli's feelings by telling him that he was being discharged because of the cost to Phillips. He further stated that he had talked to McMasters several times since he made the statement; that it was mentioned between them that he had not been interviewed by the Board; and that McMasters advised him to tell the truth. When asked whether he were afraid that there would be repercussions if he testified in accordance with his earlier statement, he answered in a moment of candor, "Oh, I actually never—I wouldn't say that the thought hasn't crossed my mind."

McMasters testified, inter alia, that Phillips had told him that Spinelli tried working as a plasterer but could not perform the work; that the processing of Spinelli's application for Union membership, the initiation fee required of him, and the imposition of an outside steward on Phillips was according to Union policy although other than that provided in the constitution and by-laws and Joint Agreement.

The Union challenges the evidentiary rulings of the trial examiner and further contends that the record as a whole does not disclose substantial evidence to support the findings that the Union caused Phillips to discharge Spinelli; that the Union, in causing Spinelli's discharge, was motivated by reasons other than his failure to pay regularly required dues and initiation fee; and that Spinelli was an employee within the Act. Even if it were assumed that the Union had caused Spinelli's discharge, it is contended by the Union that such conduct does not constitute the unfair labor practice of encouragement of union membership in violation of the Act.

*Evidentiary Rulings*

Pursuant to the provisions of Rule 43(b), Federal Rules of Civil Procedure, a party may interrogate any unwilling 'or hostile witness by leading questions. Phillips' testimony indicates that he aligned himself with the interest of the Union insofar as it related to his reasons for discharging Spinelli. He may be characterized as a hostile witness. See Rossano v. Blue Plate Foods, Inc., 314 F.2d 174, 178 (5th Cir. 1963), cert. denied 375 U.S. 866, 84 S.Ct. 139, 11 L. Ed.2d 93. Allowance of impeachment of a party's own witness is within the discretion of the trier of facts who heard him and saw him testify. United States v. Marks, 274 F.2d 15, 19 (7th Cir. 1959); Stevens v. United States, 256 F. 2d 619, 622 (9th Cir. 1958). A hostile witness who surprises the party calling him by testimony contrary to statements made prior to the trial may be impeached. O'Shea v. Jewel Tea Co., Inc., 233 F.2d 530, 535 (7th Cir. 1956).

The record is not entirely clear as to the extent of the surprise of General Counsel because of Phillips' inability to recall the details of an interview he had less than a week prior to the hearing. In view of the subject matter of an earlier interview and Phillips' poor memory as to the more recent discussion, General Counsel could reasonably believe that the truth concerning Phillips' reasons for discharging Spinelli would be resolved when this witness was under oath. These circumstances justify a finding of sufficient surprise to permit impeachment of Phillips by use of his extra-judicial statement, admittedly signed by him and believed to have been true as of the time it was signed. The record fails to show an abuse of discretion in permitting impeachment of the witness Phillips. The trial examiner did not rely on the contents of the signed statement as substantive evidence in the case.

The trial examiner also discredited portions of Phillips' testimony concerning his reasons for discharging Spinelli for want of credibility. He characterized Phillips as timorous and afraid of the Union. These attributes of the witness find support in the evidence. For example, Phillips stated he was "sissy" about hurting people's feelings; he "ran" to the executive board meeting of the Union on receiving delayed notice that his presence was required. He thought about possible repercussions if he testified according to his earlier statement. Timidity and fear of a party with whom Phillips stood in continuing relationship bespeak a state of mind that may bear on the credibility of his testimony as much as his physical demeanor at the hearing.

As to McMasters, the trial examiner found that this witness testified in a disingenuous and evasive manner, and he discredited his testimony. The description of this witness' demeanor had not been disputed. His testimony shows inconsistencies as, for example, that concerning his knowledge of the check submitted by Spinelli's attorney. No abuse of discretion has been shown in the credibility resolutions of the examiner. N. L. R. B. v. National Food Stores, Inc., 332 F.2d 249, 251 (7th Cir. 1964); Revere Copper and Brass, Incorporated v. N. L. R. B., 324 F.2d 132, 135 (7th Cir. 1963).

*Unfair Labor Practice*

Section 8(a) (3) of the Act provides that it shall be an unfair labor practice for an employer to encourage or discourage membership in any labor organization by discrimination in regard to hire or to tenure of employment except to the extent the employer obligates himself to do so under the terms of a permitted union shop agreement.

Section 8(b) (1) (A) of the Act proscribes as an unfair labor practice the conduct of a labor organization in restraining or coercing the employees in the exercise of the rights under the Act; and § 8(b) (2) proscribes the conduct of a labor organization in causing an employer to discriminate against an employee in violation of subsection (a) (3) of § 8 for reasons other than his failure to tender "periodic dues and the initiation fees uniformly required as a condi-

tion of acquiring or retaining membership." Title 29 U.S.C.A. § 158(b) (1) (A) and (b) (2).

■ If supported by substantial evidence of record, the findings of the Board that Spinelli was an employee within the Act and that the Union exerted pressure on Phillips and thereby caused him to discharge Spinelli for reasons other than his failure to tender periodic dues and pay a uniformly required initiation fee show the commission of an unfair labor practice in violation of the above-cited provisions of the Act. See Radio Officers' Union of the Commercial Telegraphers Union, A. F. L. v. N. L. R. B., 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455 (1954). Failure to pay a voluntary assessment—not periodic dues or initiation fees—does not justify causing an employee's discharge under the Act. See N. L. R. B. v. Die and Tool Makers Lodge No. 113, 231 F.2d 298, 301 (7th Cir. 1956), cert. denied 352 U.S. 833, 77 S.Ct. 50, 1 L.Ed.2d 53; N. L. R. B. v. Food Fair Stores, Inc., 307 F.2d 3, 15 (3rd Cir. 1962); N. L. R. B. v. General Motors Corp., 373 U.S. 734, 743, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963); Union Starch & Refining Co. v. N. L. R. B., 186 F.2d 1008, 1112, 1113, 27 A.L.R.2d 629 (7th Cir. 1951), cert. denied 342 U.S. 815, 72 S.Ct. 30, 96 L.Ed. 617.

■ On review, affirmance of the Board's findings and conclusions rests on an affirmative showing of substantial evidence in support thereof in the record considered as a whole. See N. L. R. B. v. Marsh Supermarkets, Inc., 327 F.2d 109, 112 (7th Cir. 1963), cert. denied 377 U.S. 944, 84 S.Ct. 1351, 12 L.Ed.2d 307; Portable Electric Tools, Inc. v. N. L. R. B., 309 F.2d 423, 426 (7th Cir. 1962). The findings of the Board need not be established by direct evidence. Radio Officers' Union of the Commercial Telegraphers Union, A. F. L. v. N. L. R. B., 347 U.S. 17, 46, 74 S.Ct. 323 (1954).

*Spinelli's Employment Status*

The term "supervisor" is defined as including an individual having authority, in the interest of the employer, to hire and discharge other employees, and do other acts in responsibly directing them by use of independent judgment. Section 2(11) of the Act, Title 29 U.S.C.A. § 152(11).

■ The record discloses that Spinelli's duties included hiring and discharging men and "looking after" jobs. Phillips faced a dilemma in describing Spinelli's activities. He considered him to be a supervisor, but he stated that everything Spinelli did was at his, the employer's direction. Phillips understood, and so instructed Spinelli, that the latter was not to supervise the men. The steward, Owens, who began working for Phillips on April 15, 1962, and who concerned himself with Spinelli's activities, objected—erroneously so—only to his distribution of paychecks to the men, and did not raise any other questions concerning his status. Spinelli was paid journeymen's wages, not the higher salary of a supervisor. His overbearing ways and occasional tendency to "take over" do not suffice to give him a status he was instructed not to assume. The finding of the Board that Spinelli was an employee has warrant in the record. N. L. R. B. v. Merchants Police, Inc., 313 F.2d 310, 312 (7th Cir. 1963). Difficult questions concerning the status of an individual under the Act are entrusted initially to the Board, charged with the day-to-day administration of the Act as a whole. Local No. 207, International Association of Bridge, Structural and Ornamental Iron Workers Union v. Perko, 373 U.S. 701, 706, 83 S.Ct. 1429, 10 L.Ed.2d 646 (1963).

*Union Pressure as the Cause of Discharge*

After the Union became aware of Spinelli's employment with Phillips, the latter was subjected to its particular attention. He was charged with the breach of an agreement which had been overlooked before. The Union sent him an outside steward whose work was not entirely satisfactory and whom Phillips could not fire. The Union informed him that Spinelli's duties could not include

plastering and supervising, thereby limiting his usefulness. And, there was pressure from the eruptions caused by Owens, the steward, whose conduct is chargeable to the Union. It was immediately after the second eruption, which Phillips considered to be a "climax" and which required the presence of Phillips and the Union president, McMasters, that Phillips told Spinelli that he could not take it any longer.

The trial examiner did not reject Phillips' "management reasons" for discharging Spinelli on the ground that they were inherently unreasonable. He did consider the insufficiency of some of the matters, such as Phillips' relations with his suppliers and the price squeezing of the latherer, as going to the credibility of the witness.

■ Counsel for the Union elicited the admission from Phillips that it would take about a month for an employer to acquaint himself as to the usefulness and ability of an employee. Spinelli was hired on February 5, 1962. He was not discharged in March or in April, but received notice late in May, after more than a month of Union activity relating to his employment had its impact on the employer. The circumstances as disclosed by the record considered as a whole reveal a pattern of union activity which resulted in unrest in operations and financial pressure on Phillips. This conduct was calculated to and permits the inference that it did cause the employer to discharge Spinelli in response thereto.

*Union Motive in Causing the Discharge*

■ The Union conditioned Spinelli's reinstatement to membership on his assumption of a corporate obligation and of an assessment of an initiation fee of $250, which amount was other than that provided in its by-laws. It secured Spinelli's agreement for installment payment of the initiation fee in a manner other than that set forth in its by-laws. Spinelli's failure to comply with these conditions, which cannot be characterized as either tender of periodically assessed dues or payment of uniformly assessed

initiation fees, is not a protected ground for denial of union membership or for causing the discharge of an employee under a union security agreement. N. L. R. B. v. General Motors Corp., 373 U.S. 734, 743, 83 S.Ct. 1453 (and cases there cited at n. 10) (1963); N. L. R. B. v. International Union, United Auto, etc., Workers, 194 F.2d 698, 701, 702 (7th Cir. 1952); N. L. R. B. v. Spector Freight System, Inc., 273 F.2d 272, 275, 276 (8th Cir. 1960), cert. denied 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877.

The fact that Spinelli had failed to achieve Union membership was communicated to Phillips. He knew that it resulted from "something" Spinelli failed to do. His knowledge of Spinelli's union status, together with the impact of the union activity here found to constitute pressure which culminated in Spinelli's discharge, supports the inference that the motive for the discharge lay in Spinelli's failure to comply with discriminatory conditions for membership. The circumstantial evidence overwhelmingly supports the finding of the Board as to the Union's pressure on Phillips.

Record proof of the circumstances warranting the inferences drawn by the Board serves to distinguish the instant case from authority cited by the Union as, for example, Steel Industries, Incorporated v. N. L. R. B., 325 F.2d 173 (7th Cir. 1963), where the court found that no inferences unfavorable to the employer could be drawn from its exercise of a management prerogative and that positive, unequivocal, and direct testimony of the employee impelled the finding that she quit voluntarily and intentionally after being informed of a shift in assignment.

■ Discriminatory denial of union membership inherently constitutes encouragement of membership in the labor organization proscribed by the Act, which may be inferred a a natural consequence of the discharge of the employee at the instigation of the Union. Radio Officers' Union of the Commercial Telegraphers Union A. F. L. v. N. L. R. B., 347 U.S. 17, 52, 74 S.Ct. 323 (1954).

There is substantial evidence of record to support the findings and conclusions of the Board. The Union's petition to set aside the Board's order is denied. The Board's request for enforcement of its order is granted.