**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**KOLPIN BROS. CO., Inc., Respondent.**

**No. 15923.**

United States Court of Appeals Seventh Circuit.

May 3, 1967.

Rehearing Denied June 15, 1967, en banc.

---

Board found to have been committed, and from violating in any other way the rights of respondent's employees under § 7 of the National Labor Relations Act, Title 29 U.S.C. § 151 et seq., § 157; to offer reinstatement and backpay to certain employees; and to post appropriate notices.

The charging union, Textile Workers Union of America, AFL–CIO, hereinafter called the "Union," secured cards from a majority of the Company's employees. On August 19, 1963, the Union requested recognition from the Company and also filed a representation petition with the Board. Subsequently, on October 17, 1963, an election was held which the Union lost. The Union contended that the Company's improper conduct dispossessed it of its once held majority status, but the Trial Examiner found that in all but a few cases the Company's employees signed the cards not to authorize the Union as their representative but solely to have a Union representative come and inform them about the Union. The Trial Examiner recommended dismissal of the charge of refusing to bargain with a majority representative of the employees. The Board adopted that recommendation.

Late in August, the Company president, Howard Kolpin, called the employees together to discuss the Union's petition. Margaret Brilla, who had been a leader in the Union's organization drive, but who had changed her mind, asked what could be done to oust the Union. There was some discussion of an employees' petition with the Company's attorney who was also at the meeting.

Mrs. Brilla testified that Mr. Kolpin telephoned her early in September, 1963, asked if she were still willing to circulate a petition and provided her with a number of arguments to induce employees to sign. She did draft and circulate a petition, repeating the arguments which she said were supplied by Mr. Kolpin to the effect that a union could cripple the shop, that Mr. Kolpin had entered into a certain contract just to provide winter employment for the employees, that he had operated the plant with only 15 or

Marcel Mallet-Prevost, Asst. Gen. Counsel, Vivian Asplund, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Herman M. Levy, Atty., N. L. R. B., Washington, D. C., for petitioner.

Albert H. Petajan, Ropella & Petajan, Milwaukee, Wis., for respondent.

Before HASTINGS, Chief Judge, and KNOCH and CASTLE, Circuit Judges.

KNOCH, Circuit Judge.

The petitioner, the National Labor Relations Board, seeks enforcement of its orders issued against the respondent, Kolpin Bros. Co., Inc., (hereinafter called the "Company") to cease and desist from the unfair labor practices, which the

20 employees instead of the 60 some employees now in the plant and could do so again, that he could cancel orders and shut down the shop.

There was a conflict in the evidence as to this telephone conversation, but the Trial Examiner who saw and heard the witnesses did not credit Mr. Kolpin's denials.

In organizing support for the Union, Mrs. Brilla had been assisted by another employee, Ronald Naparalla, who also helped to obtain about forty signatures for the petition.

The Trial Examiner found that Mrs. Brilla and Mr. Naparalla were acting as Mr. Kolpin's agents in circulating the petition and that the Company was accountable for the threats they made. He found that the Company by this anti-Union activity interfered with, restrained and coerced employees in the exercise of rights guaranteed by the Act.

The Company disputes the Board's characterization of Joseph Nicholas as a supervisor. Mr. Kolpin called him a "leadman." The Company points out that Mr. Nicholas was hired as a riveter at $1.15 per hour, that he always punched a time clock and at the time of the hearing was shipping clerk at $1.70 per hour, spending 90% of his time packing motors and gun cases and 10% helping on other jobs, carrying bundles of cases to other employees under direction of the superintendent. The Company also asserts that Mr. Nicholas never thought of himself as a supervisor. Mr. Nicholas did testify that President Kolpin told him he was a supervisor and that he could not vote in the election, and then later told him that he was not a supervisor. When he signed the petition to withdraw card authorizations from the Union, although he himself had apparently never signed such a card, he added the word "supervisor" after his signature.

Mr. Kolpin testified that he had thought of Mr. Nicholas as a supervisor until after the Union's petition for an election when he learned that capacity to hire and fire and to give out work and instructions was typical of supervisors.

Mr. Nicholas was the head of the shipping department. He was present at supervisors' meetings. (Mr. Kolpin explained that he erroneously thought Mr. Nicholas was a supervisor at that time.) A notice was posted on the Company's bulletin board listing those in charge of the various departments. Mr. Nicholas was named as in charge of the shipping department.

■ There was no clear evidence that he had any authority to hire or fire. However, he did have authority to issue written warnings and did so even months after the election. We agree that a close question is presented here, but we are satisfied that the Board has not abused its broad discretion in finding that Mr. Nicholas was a supervisor. N. L. R. B. v. Elliott-Williams Co., 7 Cir., 1965, 345 F.2d 460, 463, and cases there cited.

Employees Dora Jones and Christine Grahn testified that in the period prior to the election there was an anti-Union committee operating in the plant of which Supervisor Nicholas was a leading member.

The Board found that coercive interrogation occurred in the way of inquiry of applicants for employment as to their prior union membership (Time-O-Matic Inc. v. N. L. R. B., 7 Cir., 1959, 264 F.2d 96–99) and of various employees respecting the content of their statements to Board agents who were investigating the Union's charges, beyond such permissible inquiries as might be necessary to prepare for trial. Surprenant Mfg. Co. v. N. L. R. B., 6 Cir., 1965, 341 F.2d 756, 762–763.

There was evidence of a statement made by Mr. Kolpin that thirty days after the election he could start "cleaning house." About 40 days after the election Mrs. Jones and Leone Smoody were discharged. The next day E. R. Trampf was discharged, and a month later Miss Grahn. Both Mr. Trampf and Miss Grahn were reinstated with backpay. The Company asserts that it settled these

two cases although it still maintains that those two employees as well as Mrs. Jones and Mrs. Smoody, were discharged for valid reasons, the last two for lack of work, and not in reprisal for their active support of the Union.

 There was some conflict in the testimony on these aspects of the case. The Trial Examiner credited Mrs. Jones's testimony that she had been working overtime just prior to her dismissal on the stated ground that work was lacking. Both of these employees could fill a variety of jobs in the plant and had done so in the past, but during the period of their lay-off others were hired for jobs which these two laid-off employees might have filled. The Board noted that when the Company did offer them re-employment after the original charge was filed, the jobs offered were not those previously filled by them and were jobs they either could not perform or could perform only with great difficulty because of physical handicaps. A valid offer of re-employment must be in good faith and for work substantially equivalent to that previously performed. N. L. R. B. v. Merchants Police, Inc., 7 Cir., 1963, 313 F.2d 310, 313; N. L. R. B. v. Eastern Die Co., 1 Cir., 1965, 340 F.2d 607, cert. den. 381 U.S. 951, 85 S.Ct. 1804, 14 L.Ed.2d 724.

Mrs. Smoody had been operating a bagging machine on her last day of work but that was not her regular job and her foot condition prevented her from doing that work except as an occasional substitute. The Trial Examiner thought the offer of a bagging machine job was a valid offer of re-employment. The Board concluded otherwise. Credibility did not enter into the Board's decision, merely the inference to be drawn from the same facts considered by the Trial Examiner. Hawkins v. N. L. R. B., 7 Cir., 1966, 358 F.2d 281, 284, and cases there cited.

The record provides support for the Board's conclusion that the delay in re-employing Mrs. Jones and Mrs. Smoody was not due to lack of available work which they could perform.

Many of the conclusions of the Board result from factual findings based largely on credibility determinations. The resolution of such issues presents questions for the Board. Saginaw Furniture Shops, Inc., v. N. L. R. B., 7 Cir., 1965, 343 F.2d 515, 516–517; N.L.R.B. v. Natl. Food Stores, Inc., 7 Cir., 1964, 332 F.2d 249, 251, and cases there cited.

In computing the net backpay due, the Board deducted interim earnings and allowed no pay for the periods during which ill health would have prevented Mrs. Jones's working.

The Board's petition for enforcement of its Orders is granted.

Enforcement granted.