# NATIONAL LABOR RELATIONS BOARD v. BELL AIRCRAFT CORP. et al.

## No. 265, Docket 22660.

United States Court of Appeals
Second Circuit.

Argued May 6, 1953.

Decided Aug. 7, 1953.

Lipsitz & Green, Buffalo, N. Y., for International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, Local 501, CIO, Richard Lipsitz, Buffalo, N. Y., of counsel.

Dudley, Stowe & Sawyer, Buffalo, N. Y., for Bell Aircraft Co., Horace C. Winch, Buffalo, N. Y., of counsel.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Marcel Mallet-Prevost and Thomas F. Maher, Washington, D. C., for National Labor Relations Board.

Before AUGUSTUS N. HAND, CHASE and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The International Union, United Automobile Aircraft and Agricultural Implement Workers of America, Local 501, CIO, to be hereinafter called the union, is the duly designated collective bargaining agent of the employees of Bell Aircraft Corporation, hereinafter to be called the employer, at its plant in Wheatfield, N. Y. During all the time now pertinent there was in existence a union-shop collective bargaining agreement between the union and the employer which contained a provision that no employee against whom charges were pending in the union should be promoted to a supervisory position while such charges were pending.

A strike was called at the plant in June, 1949; but before the strike was terminated some of the employees, including Melvin Finch, returned to work. The strike was terminated by agreement in October, 1949, and one of the terms of the agreement was that the union would take no disciplinary action against any of the employees who had returned to work during the strike.

In January, 1950, a representative of the union wrote the employer advising it that charges were pending against employees who had returned to work in violation of union picket lines. And on February 1, 1951, the union sent the employer a list of over 300 employees, including Finch, against whom charges were pending, and requested, pursuant to the bargaining agreement, that none of the listed employees be promoted to supervisory positions during the pendency of the charges. The employer, relying on the above mentioned provision of the strike settlement agreement, took the position that the union's charges were without foundation. In April, 1951, the employer and the union submitted their disagreement to arbitration; and on May 31, 1951, the arbitrator decided that the employer was barred from promoting to a supervisory position anyone against whom charges were pending in the union.

Early in June, 1951, Finch's supervisor told him that he was being considered for promotion to a job as assistant foreman; but when the supervisor took steps to bring about the promotion he was told by a superior that charges were pending against Finch in the union and for this reason he could not be promoted. It was admitted by all parties that, had it not been for the union's position and the arbitrator's award supporting it, Finch would have received his promotion in due course, probably a week or ten days after his supervisor had spoken to him.

On July 24, 1951, Finch filed charges against the union and the employer. The Board concluded that the employer, by withholding Finch's promotion pursuant to its agreement with the union when it knew that the charges against Finch were not based on any failure to tender dues or initiation fees, discriminated against Finch in violation of Section 8(a)(3) and (1) of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and that the union violated Section 8 (b)(2) and (1)(A) of the Act by invoking the no-promotion provision of its contract and thereby caused the employer to discriminate against Finch. The Board ordered the union and the employer, jointly and severally, to pay Finch for the earnings he lost as a result of the discrimination, and also ordered both respondents to cease and desist from the unfair labor practices. This case is here on petition by the Board for enforcement of the order, pursuant to Section 10(e) of the Act.

It has been argued by the union that Finch was not within the protection of the

Act while he was being considered for promotion. Under Section 2(3) of the Act "employee" as defined does not include foremen or other supervisory personnel; and, it is urged, the denial of a supervisory position is for that reason not within the protection of the Act. But, even if we assume, *arguendo*, that an applicant for a supervisory position who was not already an employee of this particular employer would not have been a protected employee under the Act, it does not follow that Finch was similarly not protected. At the time the discrimination took place he was clearly a protected employee, and his prospects for promotion were among the conditions of his employment. The Act protected him so long as he held a nonsupervisory position, and it is immaterial that the protection thereby afforded was calculated to enable him to obtain a position in which he would no longer be protected.

 That brings us to the dispute as to whether what was done was in violation of the Act. Section 7 gave Finch the right to take part in the strike or not as he pleased, and if he chose not to take part in the strike it was an unfair labor practice for either the employer or the union to interfere with the exercise of that right. Section 8(a) (1) and (b)(1)(A). Nor could the collective bargaining agreement lawfully restrict that right. The clause in the agreement preventing an employee's promotion to a supervisory position during the pendency of charges against him in the union would be valid if construed to mean only charges involving the nonpayment of periodic dues and initiation fees, see Section 8(a)(3); but the possible validity of the clause is, of course, no excuse for the enforcement of it by means made unlawful by the Act.

 Implicit in the right afforded by the Act to be free from interference, coercion or restraint in the choice between engaging or not engaging in the strike is the right to be free from later reprisal for making either choice and acting accordingly. The filing of charges against Finch in the union based wholly upon his return to work before the strike ended was but a reprisal for what he had a right to do

without interference, coercion or restraint; and the union's inducing the employer to deny his promotion solely because such charges were pending was an implementation of that reprisal. Nor was the arbitrator's award a justification, since it was no more than an interpretation of a private contract which could not curtail the power of the Board to enforce the statute. N. L. R. B. v. Walt Disney Productions, 9 Cir., 146 F.2d 44, 48, certiorari denied 324 U.S. 877, 65 S.Ct. 1025, 89 L.Ed. 1429. So it is clear that in enforcing the clause in the contract and causing the denial of Finch's promotion the union violated Section 8(b)(1)(A).

Similarly, the employer violated Section 8(a)(1). It is true that it did not interpret the collective bargaining agreement to require it to deny promotion to Finch. Indeed, it wanted to promote him and but for the opposition of the union would have done so. It was a reluctant violator of Section 8(a)(1) and possibly had to choose between doing so and suffering the consequences of another strike. But compliance with the statute was possible and union coercion which induced the employer to violate it is not relevant. N. L. R. B. v. Hudson Motor Car Co., 6 Cir., 128 F.2d 528.

Section 8(a)(3) provides that it shall be an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment, to encourage or discourage membership in any labor organization". A proviso notes an exception in the case of a union shop, but a further proviso establishes that a union shop shall not justify discrimination against any employee where the employer has reasonable grounds for believing that his union membership was denied or terminated for reasons other than the nonpayment of dues or initiation fees. Section 8(b)(2) makes it an unfair labor practice for a labor organization to cause an employer to discriminate against an employee in violation of subsection (a)(3). It remains to be seen whether what was done in respect to Finch violated by the employer and the union Section 8(a)(3) and (b)(2), respectively.

The denial of a promotion to an employee because he has charges against him in the union is a discrimination designed to encourage his membership in good standing in the union, and for present purposes we interpret the "membership" intended by Section 8(a)(3) to mean membership in good standing. See N. L. R. B. v. Radio Officers' Union, 2 Cir., 196 F.2d 960, certiorari granted 344 U.S. 852, 73 S.Ct. 91; N. L. R. B. v. Gaynor News Co., 2 Cir., 197 F.2d 719, certiorari granted 345 U.S. 902, 73 S.Ct. 640. The union shop proviso does allow discrimination against an employee who fails to maintain his union membership in good standing, but it is the exception and is allowed only where the employee fails to pay his periodic dues or initiation fee. The discrimination against Finch was not within the exception. On the contrary, it was only because he exercised a right protected by the Act that charges were filed against him in the union, which here is equivalent to denying him membership in good standing; and by causing the employer, for that reason, to deny him a promotion he otherwise would have had, the union violated Section 8(b)(2). N. L. R. B. v. Radio Officers' Union, supra.

The employer knew the nature of the charges against Finch and that they did not pertain to any failure to pay dues or initiation fees. The denial of his promotion because of the charge was therefore a discrimination in violation of Section 8(a)(3). Union Starch & Refining Co. v. N. L. R. B., 7 Cir., 186 F.2d 1008, 27 A.L.R.2d 629, certiorari denied, 342 U.S. 815, 72 S.Ct. 30, 96 L.Ed. 617; N. L. R. B. v. Eclipse Lumber Co., 9 Cir., 199 F.2d 684. Consequently, we find no error in the decision of the Board that the employer violated Section 8(a)(3) and that the union caused it to do so in violation of Section 8(b)(2).

After Finch filed his charges with the Board, the union disposed of all the charges against the employees who had returned to work before the termination of the strike; and, on being so notified, the employer promoted Finch to the assistant foreman's position, which had been held open for him. But the fact that the respondents have discontinued their unlawful conduct and are now in compliance with the Board's order does not divest this court of jurisdiction to enforce the order to ensure against possible future violations of the same character. N. L. R. B. v. General Motors Corp., 2 Cir., 179 F.2d 221.

Enforcement granted.