**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FLORIDA AGRICULTURAL SUPPLY COMPANY, DIVISION OF PLYMOUTH CORDAGE COMPANY, Respondent.**

**No. 20728.**

United States Court of Appeals
Fifth Circuit.

March 12, 1964.

Allen M. Hutter, Atty., N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Dominick L. Manoli, Associate Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

Arthur W. Milam, Jacksonville, Fla., for respondent.

Before TUTTLE, Chief Judge, and JONES and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

This case comes to us on a petition for enforcement of a Board Order against Respondent company. There is no issue as to jurisdiction. On August 17, 1962, after a Board conducted election, the Union was certified but since September 21, 1962 the Company has refused to bargain about the terms and conditions of employment of William Walton and Robert Goolsby, contending that they were supervisors and not properly within the bargaining unit. The Board found that they were not supervisors when performing duties as mechanics during a portion of each year, that the refusal to bargain was a violation of § 8(a) (5) and (1) of the Act, 29 U.S.C.A. § 158(a) (5) and (1), and ordered the company to cease and desist from its refusal to bargain.[1]

The undisputed facts are that Walton and Goolsby were hired as mechanics with the understanding that at some time during the months from April to August, the peak work season of the company, they would serve as supervisors as that term is defined in the Act. 29 U.S.C.A. § 152(11). They were the only mechanics in the employ of the company. The total time spent as supervisors during this period was three months. During the other nine months of the year they worked as mechanics doing general maintenance work, electrical millwright work, and electrical and acetylene welding under the supervision of Foreman

Fouracre. Also, they spent about five percent of this nine months period as substitute supervisors for Mr. Fouracre when he was ill or on vacation. Throughout the year they attended monthly supervisor meetings. They received the pay of skilled mechanics which was in line with the pay of foreman and considerably more than that received by rank and file employees. They received three weeks vacation annually as did all the supervisors, and over half of the rank-and-file employees. Upon these facts the Board held that they should be included in the bargaining unit during the nine months when they were functioning as mechanics, and thus availed of collective bargaining representation under the Act.[2]

This conclusion rested on the view that their employment was clearly divided into supervisory and non-supervisory categories, with three months being spent annually in the first, and nine months in the latter. The Board relies on its holding in The Great Western Sugar Co. v. N.L.R.B., 1962, 137 NLRB 551, which overruled Whitmoyer Laboratories, Inc. v. N.L.R.B., 1955, 114 NLRB 749, as it concerned seasonal supervisors to sustain this position. These cases, and the Board order before us must be considered in the light of the fact that Congress in 1947 expressly excluded supervisors from the term "employee" as it was used in according rights under the Act. 29 U.S.C.A. §§ 152(3) and (11).

In Whitmoyer the Board reiterated its previously established policy of excluding workers from bargaining units who divide their time between supervisory and non-supervisory duties if their assumption of supervisory authority is regular and substantial, and not merely occasional and sporadic. It then extended this policy to hold that employees who spend a regular and substantial part of their time performing supervisory duties on a

---

1. The Union involved was United Transport Service Employees, AFL-CIO, Local 3000. The parties waived proceedings before a Trial Examiner and the case was transferred directly to the Board for decision on stipulated facts.

2. Although Goolsby is a younger and less experienced workman than Walton, and was at the time of the proceeding before the Board considered a supervisory trainee, the Board treated him as being in the same category as Walton.

seasonal basis are also supervisors within the meaning of the Act, and are therefore to be excluded from the bargaining unit.

In the first appearance of The Great Western Sugar case before the Board, 1962, 132 NLRB 936, Whitmoyer was followed in holding as supervisors employees who performed maintenance, repair and housekeeping functions and had no supervisory power during the off season, but who were supervisors during the peak work season which lasted from eighty five to one hundred twenty days each year. Upon reconsideration, the Board entered an amended decision, 137 NLRB 551, supra, with two members dissenting, to the effect that the employees in question were to be included in the bargaining unit for that period of the year when they served as rank-and-file employees as distinguished from supervisors. The basis for the change in policy was the view that the Whitmoyer, and first Great Western decision denied to individuals who spent the bulk of their working time as rank-and-file employees the right to bargain collectively concerning the terms and conditions of such employment. The gist of the decision was the sharp demarcation, under the facts, between their supervisory and non-supervisory status, which lead the Board to hold that a practicable adjustment could be made to the end that they might have the benefit of the Act during the portion of the year when they were not engaged as supervisors. The sharp demarcation concept was accentuated by pointing out that it is precisely because the functions of part-time supervisors are not so sharply differentiated that the Board policy is to the contrary with regard to them.

We need not reach the validity of this Board policy as it relates to seasonal supervisors. Indeed, it is not our province to consider policy. We are bound to determine the legal question under the facts as presented of whether an employee serving a substantial portion of the year as a supervisor may be included in the bargaining unit under the terms of the Act. 29 U.S.C.A. §§ 152(3), (11), supra.

It is clear from the undisputed facts that Walton and Goolsby do not lose their supervisory identities during the year. Their supervisory and non-supervisory functions are not sharply demarcated. They spend three months during the peak season as supervisors, and at least five percent of their time during the off season as supervisors. Further, they attend monthly supervisor meetings throughout the year. The purpose of the supervisory exclusion, as all members of the Board recognized in the last Great Western case, was to exclude supervisory employees from the bargaining unit to insure their loyalty to their employer, and to protect the rank-and-file worker from the employer through the medium of the supervisors. See also N.L.R.B. v. Retail Clerks Int. Ass'n, 9 Cir., 1954, 211 F.2d 759, cert. den., 348 U.S. 839, 75 S.Ct. 47, 99 L.Ed. 662, on the congressional purpose.

It goes without saying that a determination of supervisory status depends on the particular facts of each case. Here Walton and Goolsby under the undisputed facts were seasonal supervisors for three months, and part time supervisors for five percent of the balance of the year, serving on a stand-by basis and attending monthly supervisor meetings. This was sufficient, in sum, to render them supervisors year round within the meaning of the Act. Thus it is that they may not be included in the bargaining unit during the off season as ordered by the Board. The record, considered as a whole, does not support the order. Universal Camera Corp. v. N.L.R.B. 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

Enforcement denied.