GAF CORPORATION, Petitioner-Cross Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.

No. 75–2561
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Dec. 11, 1975.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Harry L. Browne, Stanley E. Craven, Kansas City, Mo., for petitioner.

Elliott L. Moore, Deputy Assoc. Gen. Counsel, N. L. R. B., Washington, D. C., Clifford Potter, Regional Director, Region 23, N. L. R. B., Houston, Tex., for respondent.

Before COLEMAN, AINSWORTH and SIMPSON, Circuit Judges.

AINSWORTH, Circuit Judge:

This case adds another wrinkle to what has been termed "the aging but nevertheless persistently vexing problem of whether or not an employee is a supervisor" under section 2(11) of the National Labor Relations Act, 29 U.S.C. § 152(11). *NLRB v. Security Guard Service, Inc.,* 5 Cir., 1967, 384 F.2d 143, 145 (Goldberg, J.). Here the sole issue is whether temporary service as a foreman brings a rank-and-file employee within the ambit of section 2(3) which excludes supervisors from the benefits and protections of the Act.

Petitioner GAF Corporation seeks our review under section 10(f), of the NLRB's decision and order, 218 NLRB No. 45 (June 5, 1975), finding that the Company had engaged in an unfair labor practice by refusing to bargain with the Texas City Metal Trades Council, a newly certified collective bargaining agent at GAF's Texas City, Texas plant. The Board has filed a cross-application seeking our enforcement of its order pursuant to section 10(e).

GAF concedes that it refused to bargain with the union but asserts that it did so in order to obtain review of the NLRB's decision, 214 NLRB No. 67 (October 29, 1974), sustaining the union's challenge, in a certification election, to the ballot of Winfred Reed, then acting as a foreman of the bargaining unit now certified as being represented by the Texas City Metal Trades Council. Reed's ballot is of critical importance because the September 14, 1973 election was won by the union with a plurality of only one vote. Because we find that Reed's limited service as a foreman did not disqualify him from voting in the election, we set aside the Board's decision in this case and deny enforcement of its order.

The story of this case begins in early July of 1973 when GAF offered Roy

Brewer, the maintenance supervisor at the Texas City plant, a similar job at its facility in New York. Because Brewer flatly declined this offer, the Company agreed to transfer him only long enough to set up a maintenance program and train a supervisor at the New York plant.[1] Upon Brewer's departure on or about July 16, 1973, Peter Morris, a machinist foreman at Texas City, was chosen to replace him during his absence. Reed, in turn, was elevated from his rank-and-file maintenance job to serve as a machinist foreman while Morris was taking Brewer's place as maintenance supervisor. Reed's promotion was announced by a notice, posted on the shop bulletin board, which stated that "Doug Reed will be acting as machinist foreman for an indefinite period of time." Reed testified before the Hearing Officer that Morris had told him that his appointment would last from six weeks to six months. Despite the indefinite duration of Reed's status as foreman, it was clear at the time that both his and Morris' promotions were the result of Brewer's temporary transfer to New York.[2]

Reed supervised eleven maintenance men for approximately eight weeks from mid-July until Brewer's return to Texas City a week after the election was held.[3] On September 21, Brewer again became maintenance supervisor, Morris reassumed his post as maintenance foreman, and Reed returned to his position as a rank-and-file machinist.

Contrary to the conclusions of its Hearing Officer, the NLRB found that the indefinite nature of Reed's appointment as foreman precluded his participation in the union election. Although the Board has frequently recognized that employees serving in a temporary supervisory position are not, as a rule, ineligible to vote in bargaining unit elections,[4] it concluded that in this case Reed's status was "something more than that of a temporary supervisor." In the NLRB's view, "Reed's indefinite status as a machinist foreman indicates the employer's uncertainty as well as the employees', and does not constitute notice, nor does it permit an inference that Reed was only a temporary supervisor." The Board concluded further that Reed was disqualified because he was supervising his own bargaining unit at the time of the election and because he appeared to be an employee favored by management.

▬ Of course, the Board has considerable discretion in applying the mandates of the National Labor Relations Act to the constantly changing patterns of employee-management relations. *NLRB v. Erie Resistor Corp.,* 373 U.S. 221, 236, 83 S.Ct. 1139, 1149–1150, 10 L.Ed.2d 308 (1963). Particular deference must be given to the NLRB's findings concerning the "infinite and subtle" gradations of authority which determine who, as a practical matter, falls within the statutory definition of "supervisor." *NLRB v. Swift & Co.,* 1 Cir., 1961, 292 F.2d 561, 563, quoted with approval in *NLRB v. Security Guard Service, Inc.,* supra, at 146; see *Trailmobile Division, Pullman, Inc. v. NLRB,* 5 Cir., 1967, 379 F.2d 419, 422. Consequently, this circuit has repeatedly declined merely to second-guess the Board concerning an employee's status under section 2(11) of the Act. *See, e. g., NLRB v. Houston*

---

1. The record shows that Brewer left his wife and children in Texas, and that, while he was in New York, he lived on the Company's expense account. Brewer turned down the permanent job offer for a number of reasons, one of which was that he had not liked the climate when, two years previously, he had spent approximately 10 weeks working at the New York plant on a temporary assignment. It also appears that Brewer's wife owned a business which the family did not want to dispose of.

2. Reed testified that he was never told that his position as acting foreman would be permanent. Furthermore, Brewer testified that while he was in New York he retained his position as maintenance coordinator for the Texas City plant.

3. The record does not disclose why Brewer was "hurried" back from the New York plant.

4. See, e. g., *Thermoid Company,* 123 NLRB 57, 58–59 (1959).

*Natural Gas Corp.,* 5 Cir., 1973, 478 F.2d 467; *NLRB v. Griggs Equipment, Inc.,* 5 Cir., 1962, 307 F.2d 275, 279.

We are generally obligated, though, to determine whether the NLRB's conclusions are supported by substantial evidence on the record considered as a whole,[5] and whether its application of the statutory definition of supervisor had a reasonable basis in law.[6] *NLRB v. Houston Natural Gas Corp., supra,* at 468. More specifically, we must examine the Board's decision to ensure that a reasonable balance is struck between the two labor law policies which clash in this case. On the one hand, the NLRB's decision reflects a concern evident in both its own precedent and in the decisions of this circuit that bargaining units be protected against members whose basic loyalty is necessarily to management. *See NLRB v. Florida Agricultural Supply Co.,* 5 Cir., 1964, 328 F.2d 989, 991. On the other hand, "the Board has a duty to employees to be alert not to construe supervisory status too broadly because the employee who is deemed a supervisor is denied employee rights which the act is intended to protect." *Westinghouse Electric Corp. v. NLRB,* 7 Cir., 424 F.2d 1151, 1158, *cert. denied,* 400 U.S. 831, 91 S.Ct. 63, 27 L.Ed.2d 62 (1970); *see Shoreline Enterprises of America, Inc. v. NLRB,* 5 Cir., 1959, 262 F.2d 933, 944.

In approaching this problem, we are guided by the legislative history of sections 2(3) and 2(11) which makes it clear that, rather than evidencing congressional concern over management interference in union affairs, the Taft-Hartley amendments excluding supervisors from the NLRA were, in fact, the result of organized labor's growing control over management personnel.[7] In enacting sections 2(3) and (11), Congress' preeminent purpose "was to give the employer a free hand to discharge foremen as a means of ensuring their undivided loyalty, in spite of any union obligations." *Carpenters District Council v. NLRB,* 1959, 107 U.S.App.D.C. 55, 57, 274 F.2d 564, 566. Thus, in cases involving employees who serve as temporary supervisors, where union control of management personnel cannot be a serious issue, we attach greater importance to the individual employee's right to the protections of the labor laws than we do to the invariably elusive goal of eliminating conflicts of interest among union members.[8] Eligibility to vote, then, does not depend on an employee being free from any ties with management but instead on his being "sufficiently concerned with the terms and conditions of employment in a unit to warrant his participation in the selection of a collective bargaining agent." *Shoreline Enterprises v. NLRB, supra,* at 944.

As its own jurisprudence reveals, the Board has traditionally taken a similar approach toward a rank-and-file employee's right to participate in union activities despite service as a temporary supervisor. The NLRB, for example, has long approved the "sporadic" exercise of temporary supervisory authority by a union member over his own bargaining unit. *See, e. g., Stewart & Stevenson Services, Inc.,* 164 NLRB 741, 742 (1967). Temporary supervisors, moreover, have

---

5. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951).

6. *See NLRB v. Hearst Publications,* 322 U.S. 111, 131, 64 S.Ct. 851, 861, 88 L.Ed. 308 (1944).

7. S.Rep.No.105, 80th Cong., 1st Sess. 3–5 (1947); H.R.Rep.No.245, 80th Cong., 1st Sess., Vol. 1 at 307 (1947). *See NLRB v. Security Guard Serv., Inc.,* 5 Cir., 1967, 384 F.2d 143, 147–148, quoting *International Union of United Brewery, etc. v. NLRB,* 111 U.S.App.D.C. 383,

298 F.2d 297, 303, *cert. denied sub nom. Gulf Bottlers, Inc. v. NLRB,* 369 U.S. 843, 82 S.Ct. 875, 7 L.Ed.2d 847 (1961). For excerpts of the congressional history, *see L. A. Young Spring & Wire Corp. v. NLRB,* 1947, 82 U.S.App.D.C. 327, 163 F.2d 905, 906–907 n. 2; *NLRB v. Retail Clerks Int'l Ass'n.,* 9 Cir., 1954, 211 F.2d 759, 763 n. 6, 764 nn. 7 & 8.

8. *Cf. NLRB v. Bell Aircraft Corp.,* 2 Cir., 1953, 206 F.2d 235 (employee cannot be disqualified because of the likelihood of his promotion to supervisor).

been permitted to vote even though the election occurred while they were acting in a supervisory capacity. In a case very similar to this one, the Board refused to disqualify an employee who had supervised his own bargaining unit during the month before and after a certification election:

> We do not believe . . . that . . . a nonsupervisory employee . . . may be denied his right to vote in the unit to which he properly belongs, solely because he was temporarily substituting for a supervisor at the time of the election. We find . . . that this temporary and sole assignment did not destroy [the employee's] interests as a member of [his unit], and that he is therefore eligible to vote. *Thermoid Company*, 123 NLRB 57, 58–59 (1959).

The NLRB has permitted employees in seasonal industries to vote in certification elections even though they had supervised members of their own bargaining unit for three to four months of each year. *The Great Western Sugar Company*, 137 NLRB 551 (1962). Because these employees served as supervisors only during the peak season of each year and performed exclusively rank-and-file functions in the off season, the Board found their roles to be so "sharply demarcated" that any conflict of interest problems could be resolved by excluding them from bargaining unit activities during those periods in which they served as supervisors. *Id.* at 553–554.

Taken together, the NLRB's own cases indicate that an employee may be disqualified pursuant to section 2(11) only if his temporary service as a supervisor is a regular and substantial part of his job which cannot be "sharply demarcated" from his rank-and-file duties.[9] Given these established guidelines, the Board's disqualification of Reed because he was acting as a machinist foreman during Brewer's absence can only be explained as an implicit adoption of a new policy toward temporary supervisors.[10] We find no merit, however, in the NLRB's efforts to justify the approach taken in this case.

The Board's primary conclusion was that Reed's "indefinite" status at the time of the certification election does not permit the inference that his promotion was only temporary. The facts, however, all but compel the opposite conclusion. It is undisputed that Reed's promotion was occasioned by and contingent on Brewer's temporary absence. Indeed, the written notice announcing Reed's elevation stated that he would only be "acting" as a machinist foreman. In

---

**9.** This may be the narrowest exclusion of temporary supervisors permitted under the Act. We have refused to enforce an NLRB order which would have included in a bargaining unit employees who served as supervisors full-time for three months of each year and part-time for five per cent of the remainder of each year. *NLRB v. Florida Agricultural Supply Co.*, 5 Cir., 1964, 328 F.2d 989. In that case, we found that the employees in question were paid considerably more than rank-and-file employees. *Id.* at 990. More importantly, the facts indicated clearly that the employees did not lose their supervisory identities even during those periods in which they were ostensibly performing rank-and-file functions. *Id.* at 991.

**10.** The Board's opinion relies heavily on its recent decision in *E. I. DuPont de Nemours & Co.*, 210 NLRB No. 51 (1974). There foremen were promoted to supervise a new but temporary department of a DuPont plant which, at the time of the contested election, had been in operation for at least two years. Despite the fact that each of these employees had been specifically informed that their tenure was temporary, the NLRB found them ineligible to vote because the duration of their promotion was so indefinite. On its facts, however, *DuPont* is justified on reasonable grounds which are not applicable to this case. The DuPont employees, for example, were not promoted to fill in for a regular supervisor who was only temporarily absent. Instead, they each were promoted in turn to assist in managing the "temporary" facility as it was gradually expanded. From the time of his promotion, each of these men had served as a supervisor continuously for as long as two years with no imminent prospect of a return to the rank and file. These employees, moreover, constituted the major part of DuPont's supervisory staff at the new facility. These supervisors, then, were temporary in name only and, therefore, *DuPont*, whatever its intrinsic merits, lends no support to the Board's decision in this case.

short, the indefiniteness in duration of Reed's promotion does not preclude the obvious conclusion that Brewer was going to return as soon as he had trained a maintenance supervisor at the New York plant. At the time of the certification election, therefore, Reed had to know that to a substantial degree his interests lay with the rank-and-file workers with whom he would inevitably again be working.

This conclusion is reinforced by substantial evidence indicating that, even during his tenure as foreman, Reed was not treated as a permanent supervisor. For example, Reed never wore the standard uniform used by regular machinist foremen, he did not attend their meetings, he was not paid the wage or overtime rates of regular foremen, and, unlike other foremen, he was subject to being called to the plant during off-duty hours. Consequently, the record, considered as a whole, does not support the Board's finding that Reed was not a temporary supervisor.

We find, moreover, no reasonable basis under section 2(11) for the NLRB's conclusion that Reed's ballot should not be counted because he had been supervising members of his own bargaining unit at the time of the election. As our review of the Board's decisions has indicated, an employee's supervision of his own unit has disqualified him only from participating in ongoing union activities during his temporary service as a foreman. The NLRB's traditional concern in this situation has been with the obvious impropriety of permitting a temporary foreman to participate in unit meetings and other activities while he is also serving as a supervisor. *See The Great Western Sugar Company, supra,* at 553–554. The fact that Reed supervised members of his own unit has no bearing on the question of whether he is sufficiently concerned with the terms and conditions of employment in that unit to warrant his participation in the certification election.

Finally, both the Board's decision and its brief make much of the fact that Reed's temporary promotion did not comport with GAF's general "policy of utilizing nearly every maintenance employee in the position of a step-up supervisor or as 'queen-for-a-day' to cover the absence of its regular supervisors." This observation, however, has little relevance to this case aside from indicating that Brewer's temporary assignment to New York was unusual, and, perhaps, that Reed was himself a favored employee. Even if Reed had been a favorite of management, and was, therefore, being considered for a permanent post as machinist foreman, the Board has itself held that the prospect of promotion does not preclude an employee from participating in a bargaining unit. *Cumberland Shoe Corp.,* 144 NLRB 1268, 1270–1271 (1963). We find no reasonable basis in either wording of the Act or its legislative history for the notion that an employee can be denied the protections of the labor laws because he is being considered for promotion. *See NLRB v. Bell Aircraft Corp.,* 2 Cir., 1953, 206 F.2d 235.

Order set aside and enforcement denied.