**MONOTECH OF MISSISSIPPI,**
**Petitioner/Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD,**
**Respondent/Cross–Petitioner.**

No. 88–4638.

United States Court of Appeals,
Fifth Circuit.

July 5, 1989.

---

Thomas P. Burke, Brent M. Giddens, Christopher A. Burrows, Pettit & Martin, Los Angeles, Cal., for petitioner/cross-respondent.

Howard E. Perlstein, Barbara A. Atkin, Aileen Armstrong, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for respondent/cross-petitioner.

Gerald P. Fleischut, Reg. Director, N.L.R.B., Memphis, Tenn., for other interested parties.

Before ALDISERT *, REAVLEY and HIGGINBOTHAM, Circuit Judges.

ALDISERT, Circuit Judge.

This petition for review and cross-application for enforcement adds yet another "wrinkle to what has been termed 'the aging but nevertheless persistently vexing problem of whether or not an employee is a supervisor' under section 2(11) of the National Labor Relations Act, 29 U.S.C. § 152(11), *NLRB v. Security Guard Service, Inc.*, 5th Cir., 1967, 384 F.2d 143, 145 (Goldberg, J.)." *GAF Corp. v. NLRB*, 524 F.2d 492, 493 (5th Cir.1975) (Ainsworth, J.). The issue before us is whether substantial evidence supports the decision of the National Labor Relations Board ("NLRB" or "Board"), that Ellis Floyd and Stanley Cox were supervisors at Monotech of Mississippi, and therefore, ineligible to vote as employees in a union representative election of production and maintenance employees. *See NLRB v. KDFW–TV, Inc.*, 790 F.2d 1273 (5th Cir.1986).

I.

Monotech seeks review of the Board's decision under section 10(e) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 160(e). The Board determined that Monotech had violated section 8(a)(1), (5) of the Act, 29 U.S.C. § 158(a)(1), (5), by refusing to recognize and bargain with the International Union of Operating Engineers, AFL–CIO Local 624 ("the Union"). The critical issue is whether the Board reasonably sustained the Union's challenges to the ballots of Floyd and Cox on the ground that they were supervisors.

This dispute began in 1987, when the Union sought certification as the collective bargaining representative of Monotech's 63 production and maintenance employees. A secret ballot election was held, and the Union won by a vote of 30 to 27, with five votes challenged by the Union and, therefore, not counted. The Union alleged that the challenged votes were filed by supervisors who were ineligible to vote. A hearing was held, and the Board determined that Dale Nabors and Jimmy Walker were not supervisors. The Board further determined that Ellis Floyd, Stanley Cox, and Steve Hudson were supervisors within the meaning of the Act, 29 U.S.C. § 152(11). R. 682–701. Monotech now concedes that Steve Hudson has more supervisory authority than either Floyd or Cox. Brief of Petitioner, at 15 n. 3; Reply Brief, at 14 n. 9. If the Board's decision that Floyd and Cox are supervisors is supported by substantial evidence, their ballots, as well as Hudson's ballot, may not be counted, and the Union will win the representative election. Because we conclude that the Union's challenge to the ballots of Floyd and Cox should be sustained, we deny the peti-

---

* Circuit Judge of the Third Circuit, sitting by designation.

tion for review and grant enforcement of the Board's order.

## II.

The issue of who is a supervisor is a question of fact, *NLRB v. Griggs Equipment, Inc.,* 307 F.2d 275, 279 (5th Cir.1962). To review this determination, the Act directs that a reviewing court treat the factual findings of the Board as conclusive if they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(f). But, what is substantial evidence? For some time recourse has been made to a Supreme Court statement by Chief Justice Hughes: "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). A later statement clarified further: It "means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 299–300, 59 S.Ct. 501, 504–05, 83 L.Ed. 660 (1939). By 1988, the Supreme Court was prepared to say:

> We are not, however, dealing with a field of law that provides no guidance in this matter. Judicial review of agency action, the field at issue here, regularly proceeds under the rubric of "substantial evidence" set forth in the Administrative Procedure Act, 5 U.S.C. § 706(2)(E). That phrase does not mean a large or considerable amount of evidence, but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 [59 S.Ct. 206, 217, 83 L.Ed. 126] (1938).

*Pierce v. Underwood,* ── U.S. ──, ──, 108 S.Ct. 2541, 2549, 101 L.Ed.2d 490 (1988).

This court has consistently recognized the precise allocation of competencies between the NLRB as a fact finder, and our comparatively limited role of determining the presence or absence of substantial evidence to support the Board's findings. In general, "a reviewing court should pay substantial deference to the Board's 'special function of applying the general provisions of the Act to the complexities of industrial life.'" *KDFW–TV,* 790 F.2d at 1276 (quoting *NLRB v. Erie Resistor Corp.,* 373 U.S. 221, 236, 83 S.Ct. 1139, 1150, 10 L.Ed.2d 308 (1963)). In assessing the Board's application of a statutory provision such as section 2(11), particular deference must be given to the Board's findings because of the "'infinite and subtle' gradations of authority which determine who, as a practical matter, falls within the statutory definition of 'supervisor.'" *GAF Corp.,* 524 F.2d at 494 (quoting *NLRB v. Swift & Co.,* 292 F.2d 561, 563 (1st Cir.1961)); *accord NLRB v. McEver Engineering, Inc.,* 784 F.2d 634, 643 (5th Cir.1986); *Abilene Sheet Metal, Inc. v. NLRB,* 619 F.2d 332, 343 (5th Cir. 1980). As a consequence, "this circuit has repeatedly declined merely to second-guess the Board concerning an employee's status under section 2(11) of the Act," 29 U.S.C. § 152(11). *GAF Corp.,* 524 F.2d at 494. The Board's determination regarding supervisory status should be upheld if it is supported by substantial evidence on the record as a whole and has a reasonable basis in law. *KDFW–TV,* 790 F.2d at 1277; *GAF Corp.,* 524 F.2d at 495.

## III.

Section 2(11) of the Act defines a "supervisor" as:

> any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11). It is settled that anyone who has the authority to use independent judgment in the execution or recommendation of any of the functions listed in section 2(11) is a supervisor. *KDFW–TV*, 790 F.2d at 1277; *McEver Engineering, Inc.*, 784 F.2d at 642; *Abilene Sheet Metal*, 619 F.2d at 343. These listed functions are called "primary indicia."

A noted commentator teaches that it is also appropriate for the Board to consider "secondary indicia" in determining whether an individual is a supervisor. *The Developing Labor Law* 1454, supp. at 523–24 (C. Morris ed., 2d ed. 1983 & S. Linnick, S. Gordon & H. Datz ed., 3d Supp.1988); [hereinafter *"The Developing Labor Law"*] (collecting cases); *see also NLRB v. Chicago Metallic Corp.*, 794 F.2d 527, 531 (9th Cir.1986). Secondary indicia recognized by the Board include an employee being perceived by their co-workers as a supervisor, *The Developing Labor Law*, at 1454, supp. at 523–24; *see also Helena Laboratories Corp.*, 225 NLRB 257, 265 (1976) (employee accorded supervisory status where company held her out to employees as such), *modified*, 557 F.2d 1183, 1187 (5th Cir. 1977), attending management meetings, *NLRB v. Clark Manor Nursing Home Corp.*, 671 F.2d 657, 659 (1st Cir.1982); *NLRB v. Koplin Bros. Co.*, 379 F.2d 488, 490 (7th Cir.1967), spending more time ordering others around than actually doing production work, *NLRB v. Dadco Fashions, Inc.*, 632 F.2d 493, 496 (5th Cir.1980), receiving a higher wage than other unit employees, *Jeffrey Manufacturing Division, Dresser Industries, Inc., v. NLRB*, 654 F.2d 944, 950 (4th Cir.1981); *International Union, United Automobile Workers, UAW v. NLRB*, 455 F.2d 1357, 1363 (D.C.Cir.1971), wearing a different colored uniform or other distinguishing clothing, *NLRB v. Big Three Industrial Gas & Equipment Co.*, 579 F.2d 304, 309 (5th Cir.1978); *Justak Brothers and Company, Inc. v. NLRB*, 664 F.2d 1074, 1080 (7th Cir.1981), or where a court's finding that an individual is not a supervisor creates an unreasonable ratio of employees to supervisors, *Abilene Sheet Metal*, 619 F.2d at 344.

## IV.

The facts establish that both Floyd and Cox possessed primary and secondary indicia of supervisory status. We will discuss primary indicia first.

The Board found that Floyd effectively recommended wage increases for employees in his department. R. 687, 695. Substantial evidence supports this finding. Employee Dill testified that Floyd told 10 or 11 employees that the plant was converting to a merit system, so if any employees felt they needed a raise, they should come to him. R. 24. Soon thereafter, Dill asked Floyd for a raise, and Floyd agreed to recommend one. Floyd and Cox met with Manager Howell to discuss the request and agreed a raise was warranted. Howell then announced the raise to Dill. R. 24, 687. In the summer of 1987, employee Lomenick asked Floyd for a raise. Floyd said that he would recommend one and see what happened; Lomenick later received a raise. R. 77–78, 87–88, 687. Floyd also recommended employees Lambert, Liggon and Patrick for raises in 1987, and all three received raises shortly thereafter. R. 485–87, 687. There was only one occasion when Floyd recommended an employee for a raise and that employee did not receive a raise. R. 695. On another occasion, Lomenick received a raise from Irwin, the plant manager, without any recommendation from Floyd. R. 357–58, 688.

The Board also found that Cox had threatened or taken disciplinary action against unit employees on numerous occasions. R. 690–91. This finding is supported by the testimony of Dill, R. 18–20, Lomenick, R. 79–81, and employee Gonzales, R. 184. In addition, Cox had authority to grant time off, although if any employee wanted a full day off, he was required to speak with either Manager Irwin or Howell. R. 690. Again, this finding is supported by the record. R. 23, 47–48, 252–53.

From this testimony, we see that the functions of Cox and Floyd fit within the primary indicia set forth in the statute. In

addition, there is ample evidence of secondary indicia.

At the time of the hearing, Cox and Floyd were lead hands. Cox was responsible for 14 employees, and Floyd was responsible for four employees. R. 482–83, 546–47, 684, 689. Each man was responsible for directing the flow of work, helping employees with problems and questions, and reading blueprints. R. 17, 27, 78, 175, 482–83, 548, 558, 686–87, 689. If there were conflicting measurements on a blueprint, or an employee needed a timecard verified, the employees knew that both Cox and Floyd could help them. When the time-clock malfunctioned, Floyd wrote in the time for his employees. Floyd also maintained production records. R. 81–82, 103, 350–51, 538–39, 672, 685, 696, 697.

Cox and Floyd shared the working conditions of unit employees. Thus, each was paid hourly, punched a timeclock, and received the same holidays, vacation, and medical and life insurance benefits as unit employees. R. 341, 342, 405, 684. However, they regularly arrived at the plant about 15–30 minutes before unit employees, to prepare for the day's work. R. 487, 497, 566, 684. Cox was paid 50 cents per hour more than the highest wage rate in his department; Floyd made considerably more than 50 cents above unit employees. R. 34–42, 489, 575–76, 684. Neither man was paid overtime, R. 405, 597, 566, 684, and each spent less than half of his time performing manual labor. R. 17, 27, 78, 686–87. In addition, Cox and Floyd wore differently colored uniform-shirts than other employees. R. 95–96, 142, 684.

Upon our review of the record we are satisfied that substantial evidence was present in the decision of the Board in the matter before us.

## V.

We have carefully considered all contentions presented by the petitioner, especially the evidence addressed by the petitioner in its brief, *see* Brief for Petitioner/Cross-Respondent, at 26–36, but settled law dictates that the reviewing court is neither the fact-finder nor the weigher of evidence. Our role is to determine whether a sufficient quantum of evidence supports the Board's decision. We hold that it does.

The petition for review is denied and the cross-application by the Board for enforcement is granted.