United States Court of Appeals,

Fifth Circuit.

No. 91–4533.

NATIONAL LABOR RELATIONS BOARD, Petitioner–Cross–Respondent,

v.

DICKERSON–CHAPMAN, INC., Respondent–Cross–Petitioner.

July 1, 1992.

Petition for Review and Cross–Petition for Enforcement of an Order of the National Labor Relations Board.

Before WILLIAMS, JOLLY, and HIGGINBOTHAM, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The National Labor Relations Board ("NLRB") petitions us to enforce its order directing Dickerson–Chapman, Inc. ("DCI") to bargain with the Union. DCI argues that it is under no duty to bargain. First, DCI contends that the Board's order is unenforceable because, in leaving the status of seven foremen unresolved, the Board failed to make a determination of an appropriate bargaining unit. DCI further argues that it has no duty to bargain for the additional reason that the certified unit is inappropriate because it includes fifteen foremen and crew leaders who are supervisors.

We conclude that the Board did satisfy its duty to make a determination of an appropriate bargaining unit. Further, the Board did not abuse its discretion in failing to determine the status of the seven foremen before conducting the election or certifying the unit. Finally, there is substantial evidence in the record supporting the Board's determination that the fifteen foremen and crew leaders were not supervisors. Therefore, we grant the Board's petition for enforcement. We hold, however, that because the Board failed to determine that the seven foremen were not supervisors, they are, on this record, not included in the unit, and thus are not included in this enforcement order.

I

The National Labor Relations Board seeks enforcement of its order against

Dickerson–Chapman, Inc. to bargain with the Union. DCI, who is in the business of digging ditches for South Central Bell Telephone Company's lines, junction boxes, and cable conduits, employs construction and maintenance field crews which, including the foremen and crew leaders, the Union sought to represent. DCI argued that an appropriate unit must exclude crew foremen and crew leaders because they are supervisors within the meaning of 29 U.S.C. § 152(11). After a hearing, the Regional Director found that an appropriate bargaining unit consisted of certain classifications of employees, excluding any employee in that classification who is a supervisor.[1] The Regional Director found that DCI's four administrative officers, J.M. Stewart, Bryan Wampler, Howard Berry, and Robert Ainsworth, were supervisors. He also found that service wire foreman Homer Parker, cable foreman Pete Hayman, and conduit foreman Alva Abel were supervisors. The Regional Director found that the remaining workers in the classifications were not supervisors and were therefore eligible to be in the bargaining unit. The Board amended the Regional Director's decision, finding that there was a substantial question as to the status of seven of the foremen.[2] It found the remaining fifteen foremen and crew leaders at issue to be employees.[3]

The Board allowed the seven foremen to vote subject to challenge by DCI following the vote. The Union won the representation election by twenty-nine votes—the vote was 38 to 9. DCI filed objections to the election on the grounds that the Board included supervisors in the voting unit. The

---

[1]The Regional Director found the following employees to constitute an appropriate bargaining unit:

> All full-time operational service personnel, including operators, laborers, drivers, operator/drivers, crew leaders, maintenance employees, driver/foremen, foremen/trainees, service wire foremen, pole foremen, conduit foremen and cable foremen employed by Jackson, Mississippi facility; excluding office clerical personnel, professional employees and supervisors as defined by the Act.

[2]These seven were conduit foreman Lee Earl Moore and cable foremen William Burkes, Isaiah MacDonald, Linden Hill, Clifford Stafford, Jewel Owens, and James Spiller.

[3]The fifteen employees were service wire foremen J.D. Freeman, Robert Taylor, Harvey Miner and Odess Jones; pole foremen James Hicks and Kenneth Easterling; conduit foreman Vernon Wilson; cable foremen Lee Field Johnson, Ben Alford, Tommy Obie, and Wycliff McPherson; driver/foreman James Wade; and maintenance technician crew leaders Earl Howard, Elijah Pitchford, and Joe Smith.

Regional Director, affirmed by the Board, overruled the objections, holding that supervisory issues could be resolved only in a challenge proceeding, which was unnecessary because the challenged ballots were insufficient to affect the Union's majority. On May 9, 1990, the NLRB certified the Union as the bargaining representative of an employee unit including foremen and crew leaders who were not supervisors.

The Union demanded negotiations and DCI refused. The Union filed an unfair labor practice charge alleging that DCI had unlawfully refused to bargain with the Union. DCI responded that the underlying certification was invalid because the unit included foremen and crew leaders who were supervisors.[4]

General Counsel moved for summary judgment and the Board granted that motion. It found that DCI was raising issues that could have been presented at the representation hearing and was not offering any newly discovered evidence or evidence that was previously undiscoverable. Accordingly, the Board issued a cease and desist order requiring DCI to bargain with the certified unit. The Board now petitions us to enforce its order.

## II

As we have stated, DCI is a ditch-digging contractor that digs ditches, sets poles, and supplies maintenance crews for South Central Bell. At the time of the hearing, there were four persons clearly in management positions: general manager J.M. Stewart, office manager Bryan Wampler, and field superintendents Howard Berry and Robert Ainsworth. The remaining employees were divided into different construction crews: conduit, pole, cable, boring, and service wire crews, each headed by a foreman. Additionally, there were maintenance crews headed by crew leaders.

---

[4]DCI also filed a unit clarification petition, asking the NLRB to revisit the supervisory status of the foremen and crew leaders. The Regional Director, affirmed by the NLRB, denied the petition on the grounds that the supervisory status of those workers would be resolved in the unfair labor practice hearings.

With respect to the routine work day, the record establishes the following: All of the employees usually report for work around 7:00 a.m. Each of the foremen and crew leaders receive job descriptions or blue prints from one of the managers. The crews then gather the necessary tools and supplies and go the various job sites scattered across the area. For the most part, the laborers are supervised by their foreman or crew leader; the managers do, however, go out to the job sites on occasion. The services performed by the crews are mostly routine and the laborers require little supervision. The foremen and crew leaders spend most of their time operating machinery, but they also perform manual labor alongside the crew members. They are paid hourly wages, but are paid more than the rest of the laborers. The foremen and crew leaders with seniority receive more vacation.

## III

DCI argues that the NLRB's decision is not supported by the record because the evidence establishes that several of the foremen and crew leaders included in the bargaining unit exercised supervisory authority. Furthermore, DCI contends that, in any event, all of the foremen and crew leaders possessed the same authority and that, consequently, all are supervisors. Finally, DCI argues that Board's order cannot be enforced because the Board failed to determine an appropriate bargaining unit because it left the status of seven foremen dangling.

On the other hand, the Board argues that it acted within its discretion in determining an appropriate bargaining unit without resolving the status of the seven challenged voters, because their votes did not affect the outcome of the election. The Board further argues that it is entitled to enforcement of its bargaining order because substantial evidence supports its determination that the foremen and crew leaders included in the unit were not supervisors.

## IV

First, we will address DCI's argument that the Board's order cannot be enforced because the

Board failed to determine an appropriate bargaining unit as required by Section 9(b) of the Act.[5] "The Board does have broad discretion under Section 9(b) when making a unit determination. That section's language, however, expressly requires that the Board make a determination "in each case.' " *NLRB v. Cardox Div. Of Chemetron Corp.,* 699 F.2d 148, 153 (3rd Cir.1983). DCI argues that the Board failed to satisfy its statutory duty to determine an appropriate bargaining unit when it failed to determine the eligibility of seven contested unit members before conducting the election, requiring the seven to vote a challenged ballot instead.

In making its argument, DCI relies on *Cardox.* In *Cardox,* because the company voluntarily bargained with the unit, the Board did not make a determination of an appropriate bargaining unit. The court held that the Board failed to satisfy its statutory duty. *Cardox,* however, is distinguishable from DCI's case. In *Cardox,* the Board made no determination whatsoever. Here, the Regional Director determined that the bargaining unit included certain classifications of employees, including foremen and crew leaders. The Regional Director in his determination of the unit, however, excepted three foremen from the unit because they exercised supervisory authority. Upon its review, the Board determined that there was a substantial issue as to the supervisory status of seven additional foremen who the Regional Director had included. Nevertheless, it affirmed the Regional Director's determination of the appropriate bargaining unit but questioned the inclusion of seven named individuals, and concluded that those seven would vote in the election subject to challenge. Thus, the Board satisfied its statutory duty to determine an appropriate bargaining unit. It simply postponed a decision concerning whether named individuals were within the described unit—a unit which included foremen and crew leaders, but which excluded supervisors.

Furthermore, the Board did not abuse its discretion in allowing the seven employees to vote subject to challenge. The challenge procedure, a longstanding Board practice, *NLRB v. Doctors'*

---

[5]Section 9(b) provides that the Board shall decide in each case the appropriate collective bargaining unit. 29 U.S.C. § 159(b).

*Hospital of Modesto, Inc.,* 489 F.2d 772, 776 (9th Cir.1973), "enables the Board to conduct an immediate election where ... it is undecided about the eligibility of a relatively small number of individuals whose votes may not affect the election." *Medical Center at Bowling Green v. NLRB,* 712 F.2d 1091, 1093 (6th Cir.1983). *See also NLRB v. Klingler Elec. Corp.,* 656 F.2d 76 (5th Cir.1981) (court enforced order in case in which eight workers, whose supervisory status was at issue, were allowed to vote subject to challenge). In the instant case, the seven workers' votes did not affect the outcome of the election; the union won by twenty-nine votes. Therefore, the Board did not abuse its discretion in allowing the workers to vote subject to challenge.

V

Next, we will address the status of the fifteen foremen and supervisors who were included in the bargaining unit. The Board argues that there is substantial evidence in the record which supports its determination that the fifteen employees included in the unit were not supervisors. DCI contends, however, that the evidence supports only the conclusion that all of the foremen and crew leaders were supervisors.

Section 152(11) defines a supervisor as:

> any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

28 U.S.C. § 152(11). "It is settled that anyone who has the authority to use independent judgment in the execution or recommendation of any of the functions listed ... is a supervisor." *Monotech of Mississippi v. NLRB,* 876 F.2d 514, 517 (5th Cir.1989).

This court, however, does not review the NLRB's determination of a worker's status *de novo.* Instead, we "determine whether the NLRB's conclusions are supported by substantial evidence on the

record considered as a whole." *GAF Corp. v. NLRB,* 524 F.2d 492, 495 (5th Cir.1975).

> In general, "a reviewing court should pay substantial deference to the Board's "special function of applying the general provisions of the Act to the complexities of industrial life.' " In assessing the Board's application of a statutory provision such as § 2(11), particular deference must be given to the Board's findings because of the " "infinite and subtle' gradations of authority which determine who, as a practical matter, falls within the statutory definition of "supervisor.' " As a consequence, "this circuit has repeatedly declined merely to second-guess the Board concerning an employee's status under section 2(11) of the Act."

*Monotech,* 876 F.2d at 514 (internal citations omitted).

DCI first argues that because the Board found that three of the individuals in the bargaining unit classification of foreman were supervisors, all in the classification of foreman must be treated as supervisors because all generally occupy the same hierarchial position in the organization. DCI has not persuaded us with any authority that this postulation represents the law on the subject. An employee's specific job title and station in the organization are not automatically controlling. The employee's *actual* authority and responsibility determine whether he is a supervisor. *Walla Walla Union Bulletin, Inc. v. NLRB,* 631 F.2d 609, 612 (9th Cir.1980). We agree that ideally, and perhaps even typically, the bargaining unit includes all employees in a certain classification, e.g., foreman or crew leader. In this case, however, the Board found that some employees occupying these classifications have supervisory authority based on their seniority and experience. Thus, we will look to the record to determine whether the Board's determination that the fifteen foremen at issue were employees—and not supervisors—is supported by substantial evidence in the record.

A

Service Wire Foremen

The Board found that service wire foremen J.D. Freeman, Robert Taylor, Harvey Miner, and Odess Jones were not supervisors. Homer Parker, however, was found to be a supervisor. The Board concluded that there was no evidence that Freeman, Taylor, Miner, or Jones had the authority to hire, fire, discipline, or promote employees. The service wire crew digs a pathway from the

terminal to the customer's house in order to bury the service wire. The record indicates that wire service foremen spend a majority of their time operating the trenching machine which digs a pit. The foremen, also, spend about a quarter of their time digging in the pit with the laborers. The Board further found that the laborers did not require close supervision and that these four foremen did not use any independent judgment in directing their crews. The Board found that Parker, however, effectively recommended that employees be transferred and discharged.

In *NLRB v. McEver Engineering, Inc.,* 784 F.2d 634 (5th Cir.1986), we held that the Board's determination that a working foreman (or leadman) was not a supervisor was supported by substantial evidence. There, the working foreman was paid by the hour and spent a majority of his time performing manual work alongside the crew members. He assigned duties to his crew members, but the Board found this to be a routine matter not involving independent judgment. *See also Highland Superstores, Inc. v. NLRB,* 927 F.2d 918 (6th Cir.1991) (court held that there was substantial evidence in the record to support the Board's determination that six "leadmen," who allocated manpower among various jobs, were not supervisors was supported by substantial evidence). There is no evidence in the record that these four service wire foremen ever hired, fired, or transferred any laborers. Nor is there any evidence to suggest that their supervision was anything other than perfunctory. Thus, we hold that substantial evidence supports the Board's determination that these four service wire foremen were not supervisors.[6]

[6]At the representation hearing, DCI submitted several signed job descriptions indicating that the foremen and crew leaders had supervisory authority. Wampler also testified that the foremen and crew leaders whose status was at issue had the same supervisory authority as the foremen that the parties stipulated was a supervisor. The Regional Director—affirmed by the Board—discredited this evidence. The job descriptions were issued two days prior to the trial. Furthermore, job descriptions do not necessarily vest employees with supervisory power. *NLRB v. Security Guard Service, Inc.,* 384 F.2d 143, 147 (5th Cir.1967). The Board does not have to defer to testimony that employees had the authority listed in the job descriptions when several of the employees testified that they had no such authority and there was no other evidence indicating that they had such authority. *Central Freight Lines, Inc. v. NLRB,* 653 F.2d 1023, 1025 (5th Cir.1981).

DCI further argues that because the hearing officer at the representation hearing stated that no credibility determinations would be made, the Board is estopped from discrediting this evidence. We think DCI misunderstands the hearing officer's statements.

B

Pole Foremen

The Board found that pole foremen James Hicks and Kenneth Easterling were not supervisors. There is no evidence that either foreman had authority to fire or hire employees. The pole crews are charged with the responsibility of erecting the utility poles. The pole foremen usually operate an auger most of the day while the laborer works on the ground. There is evidence that their supervision was routine and perfunctory; Easterling testified that after a few days on the job, a laborer knows what to do and that supervision after that point is minimal. There was evidence that Easterling effectively recommended that two laborers be transferred and that one laborer receive a pay raise. The Board found that Easterling's limited exercise of authority arose from his position as a skilled laborer rather than a supervisor. In *NLRB v. Orr Iron, Inc.,* 508 F.2d 1305 (7th Cir.1975), the court held that despite the fact that a night foreman disciplined two employees, he was not a supervisor. "[T]hese were incidental and extraordinary exceptions to [the foreman's] regular practice, and when looked against a total background do not in any way show that [he] had the authority to discipline or recommend the discipline of employees as one of his regular functions." *Id.* at 1307. Thus, because all other evidence unequivocally supports their non-supervisory status, we hold that

At one point, the hearing officer refused to exclude two employee witnesses, who were testifying on behalf of the Union, from the courtroom. The two witnesses were involved in discharge cases against DCI and the hearing officer stated that any credibility determinations made from the transcript would not be binding in those discharge cases. Thus, the hearing officer cannot be interpreted to mean that no credibility determinations would be made in the representation case.

Later, the hearing officer repeated that no credibility determinations would be made. DCI was attempting to introduce testimony of Alva Abel, a stipulated supervisor, in order to show that other foremen had the same supervisory authority. The Hearing Officer stated that no credibility determinations would be made regarding Abel's testimony as opposed to Union's witnesses' testimony. Apparently, the hearing officer made this statement because it was already stipulated that Abel was a supervisor and therefore there was no need to make credibility determinations. The hearing officer then stated that he would allow Abel's testimony to the extent that it regarded other foremen's authority. Clearly, the hearing officer did not mean that no credibility determinations would be made based on the transcript from the representation hearing. He only meant that in those two particular circumstances, no credibility determinations would be made or that they would not be binding on the discharge cases. Therefore, the Board is not estopped from making credibility determinations relating to job descriptions.

the Board's finding that Hicks and Easterling were not supervisors is supported by substantial evidence in the record.

## C

### Conduit Foremen

The parties stipulated that conduit foreman Alva Abel was a supervisor. He is an experienced salaried conduit foreman who was hired several years ago by DCI and is assigned to the most complex jobs. The Board found that there was a substantial issue as to the status of conduit foreman Lee Earl Moore. He is also a very skilled foreman, normally assigned to emergency or sporadic jobs. The Board found that conduit foreman Vernon Wilson was not a supervisor. Conduit crews are responsible for laying conduit through which telephone cables can be run. The conduit foremen spend the great majority of their time operating a backhoe. The foremen spend the remainder of their time doing manual labor with the laborers in their crew. The Board found that the crews performed roughly the same tasks every day and that the laborers did not require close supervision. There is no evidence that Wilson had the authority to hire, fire, transfer, or discipline employees. Thus, we hold that the Board's determination that Wilson was not a supervisor is supported by substantial evidence in the record.

## D

### Cable Foremen

The Board found that cable foreman Pete Hayman was a supervisor. Hayman had worked for DCI for a long period and was very experienced. There was testimony that he had effectively recommended that employees be hired and fired. The Board further found that there was a substantial issue as to the status of cable foremen William Burkes, Isaiah MacDonald, Linden Hill, Clifford Stafford, Jewel Owens, and James Spiller. The Board found that cable foremen Lee Field Johnson, Wycliff McPherson, Ben Alford, and Tommy Obie were not supervisors. The Board found that there was no evidence supporting the conclusion that these foremen possessed or exercised any supervisory

authority warranting their classification as supervisors. Cable crews are assigned to bury telephone cable underground. The cable foremen operate backhoes and trenchers but when no machinery is needed, they assist the laborers with manual digging. The Board again found that the work was repetitious, that the foremen did not really direct the crew members, and that close supervision was unnecessary. Wampler testified that Lee Field Johnson had an employee fired because the employee physically assaulted Johnson and failed to carry out his duties. Johnson, however, testified that he did not recommend that the employee be fired. Johnson stated that he tol d Wampler what had happened and that Wampler fired the employee. Johnson also testified that he did not have the authority to hire, fire, transfer, or discipline employees. Thus, we hold that the Board's determination that Johnson, McPherson, Alford, and Obie were not supervisors is supported by substantial evidence in the record.

E

Maintenance Technician Crew Leaders

The Board found that maintenance technician crew leaders Earl Howard, Elijah Pitchford, and Joe Smith were not supervisors. Maintenance technician crews, among other tasks, dig up damaged cables and replace them. The foremen spend most of their time operating machinery but do perform some manual labor with the crew members. Again, the Board found that the laborers did not require close supervision, that most tasks are performed daily, and that there was no evidence supporting the conclusion that the crew leaders had the authority to hire, fire, transfer, or discipline employees. We hold that there is substantial evidence in the record supporting the Board's determination that these foremen were not supervisors.

F

Driver/Foreman

The Board found that driver/foreman James Wade was not a supervisor. Wade's normal job is to drive a truck. He substitutes as a foreman or crew leader about ten times a month. Wampler

testified that at the time Wade was a full-time wire service foreman, he effectively recommended that an employee be fired. The Board, however, found that there is no evidence that Wade had supervisory authority after he became a driver who only occasionally substituted as a foreman. We hold that there is substantial evidence in the record supporting the Board's determination that Wade was not a supervisor.

We therefore hold that there was substantial evidence supporting the Board's determination that the fifteen foremen and crew leaders were not supervisors. Thus, these employees were properly included in the bargaining unit and DCI must bargain with the Union over the terms of their employment.

## VI

In conclusion, we hold that the Board did determine an appropriate bargaining unit. The Board did not abuse its discretion by postponing its decision regarding the individual status of seven named foremen and allowing them to vote subject to challenge. We further hold the Board's determination that the fifteen foremen and crew leaders were not supervisors is supported by substantial evidence in the record. Therefore, these fifteen employees were properly included in the bargaining unit. Because DCI unlawfully refused to bargain with an appropriate unit that was duly certified, we grant enforcement of the Board's order. In doing so, however, we hold that the seven unresolved foremen are not included in the enforcement order because the Board did not make a determination that they were not supervisors.[7] That decision is left to another day and to another forum.

ENFORCEMENT GRANTED AS CLARIFIED.

---

[7]Usually, the question of whether these seven are eligible for the bargaining unit should be resolved by the Board through the Board's unit clarification procedure. *Medical Center,* 712 F.2d at 1093. DCI requested a unit clarification proceeding, but the Regional Director and the Board denied the request on the grounds that the unfair labor practice proceedings would probably determine the supervisory status of the twenty-two foremen and crew leaders.