**UNITED EXPOSITION SERVICE COMPANY, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 90–2800.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1991.

Decided Oct. 4, 1991.

Ross A. Friedman, St. Louis, Mo., for petitioner.

Joseph A. Oertel, argued (Jerry M. Hunter, D. Randall Frye and Aileen A. Armstrong on the brief), Washington, D.C., for respondent.

Before JOHN R. GIBSON, Circuit Judge, and FLOYD R. GIBSON and ROSS, Senior Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

United Exposition Service Company, Inc., appeals from a decision and order of the National Labor Relations Board holding that the company violated sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (3) (1988). The Board adopted the ruling of an administrative law judge (ALJ) that the company refused to assign employee James T. Gibson out of town supervisory work assignments because of his participation in the striking activities of the Teamster's Local Union No. 600. *United Exposition Serv. Co.*, 300 N.L.R.B. 26 (1990). The Board ordered United Exposition to pay backpay with interest to Gibson, and to reappoint him to out of town supervisory positions. United Exposition argues that: (1) the Board's decision is not supported by substantial evidence, and (2) the Act does not apply to Gibson because its coverage does not extend to supervisors. We enforce the Board's order.

United Exposition provides decorating services for conventions and expositions across the United States. James T. Gibson has worked for the company since 1978, and is presently the second most senior employee in his unit. Although Gibson is a member of the Teamster's Local 600, with which United Exposition has a collective bargaining agreement, for nine years, the company regularly assigned him to act as supervisor for out of town work projects. Supervising out of town projects is a coveted assignment because it guarantees the supervising employee a minimum of eight hours of work per day instead of the four hours guaranteed to nonsupervising employees, and it pays an additional one dollar per hour.

On September 7, 1988, Gibson and the other members of his unit began a twelve day economic strike. Their activities included picketing United Exposition's place of business and calling company employees "scabs" as they crossed the picket line. At one point during the strike, Gibson wiggled his ears and made funny faces at one of the company's account executives while standing outside the executive's office window. After the strike, United Exposition stopped assigning Gibson to out of town work projects.

In late January or early February 1989, Gibson began to notice that he was no longer being offered out of town supervisory assignments. Curious about the apparent change in policy, Gibson asked Cecil Hampton, the union's alternate shop steward, for an explanation. Hampton went straight to company president Thomas Tucker and asked why Gibson was no longer being assigned to supervise out of town projects. Tucker explained that Gibson had not been "respectful to company equipment and replacement personnel during the strike and he no longer felt comfortable using him in [a supervisory position]." When Hampton pressed Tucker as to exactly what Gibson had done wrong, Tucker responded that Gibson had put his nose up to someone's office window. Tucker denies making these statements and claims that any conversation he may have had with

Hampton about Gibson's work assignments took place in October 1988. Gibson served notice of his charge of discrimination on United Exposition on July 7, 1989. United Exposition argues that any claim of an unfair labor practice stemming from the Tucker–Hampton discussion is time barred under 29 U.S.C. § 160(b) (1988),[1] alleging that the conversation took place in October 1988.

In its order, the NLRB affirmed the administrative law judge's conclusions that United Exposition refused to assign Gibson out of town supervisory projects because he engaged in protected strike activities, and that Tucker explained these reasons to Hampton in late January or early February of 1989.

## I.

■ United Exposition argues that the Board erred in adopting the ALJ's determination that Tucker's alleged statements took place, and that they occurred in late January or early February of 1989, because neither finding is supported by substantial evidence. The ALJ concluded that General Counsel for the NLRB made a prima facie showing that United Exposition unlawfully discriminated against Gibson by ceasing to appoint him as a supervisor on out of town jobs. *See Wright Line, Div. of Wright Line, Inc.*, 251 N.L.R.B. 1083, 1088 n. 11, 1089 (1980), *enf'd on other grounds*, 662 F.2d 899 (1st Cir.1981) (Board has burden of making prima facie showing of employer's unfair labor practice).

Our standard of review on this issue is narrow. "[F]indings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e) (1988); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 493, 71 S.Ct. 456, 467, 95 L.Ed. 456 (1951). The Supreme Court has said that a reviewing court "may not 'displace the Board's choice between two fairly conflicting views, even

though the court would justifiably have made a different choice had the matter been before it *de novo*.'" *NLRB v. Walton Mfg. Co.*, 369 U.S. 404, 405, 82 S.Ct. 853, 854, 7 L.Ed.2d 829 (1962) (quoting *Universal Camera*, 340 U.S. at 488, 71 S.Ct. at 465).

The essential findings with regard to the timing and content of Tucker's statements depend upon credibility determinations made by the administrative law judge and adopted by the Board. "We will not overturn findings based on credibility determinations unless they shock our conscience." *NLRB v. Iowa Beef Processors, Inc.*, 675 F.2d 1004, 1006 (8th Cir.1982). The Board's findings in this case do not shock our conscience. To the contrary, we conclude that the evidence amply supported the ALJ's credibility determinations. The ALJ credited Gibson's testimony, which Cecil Hampton, a fellow union employee, corroborated. The ALJ noted that there was no reason to believe that Hampton would be untruthful, since he had been getting the out of town work denied to Gibson and it would be "wholly inconsistent with [his] economic interest" to lie for Gibson. Hampton verified Tucker's explanation that the company was unhappy with Gibson's strike activities. Although Hampton could not remember whether his conversation with Tucker took place in September or October of 1988, as Tucker claimed, or in late January or early February of 1989, as Gibson claimed, Hampton remembered that the job Gibson inquired about not being assigned to involved four employees. It is undisputed that the February 1989 job required four employees, while the October 1988 job only required two.

The administrative law judge based his conclusions in part on the time frame in which United Exposition stopped assigning Gibson to out of town supervisory jobs. He had received seven out of twelve available assignments between February 1987 and August 1988, and, after the Teamsters'

1. Section 160(b), also known as Section 10(b) of the Act, requires that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the

charge with the Board and the service of a copy thereof upon the person against whom such charge is made...." 29 U.S.C. § 160(b) (1988).

strike in September of 1988, United Exposition stopped assigning Gibson to the out of town trips. In the past, we have upheld the Board's conclusions regarding the timing of an employer's unlawful act. *See NLRB v. Chem Fab Corp.*, 691 F.2d 1252, 1261 (8th Cir.1982).

United Exposition attempted to rebut the Board's prima facie showing of discrimination by alleging that it stopped assigning Gibson out of town work due to his unsuitable temperament and poor judgment. The ALJ found, however, Tucker's testimony regarding Gibson not to be credible. The ALJ also drew adverse inferences from the fact that the company failed to have two of its employees, Mikealle Grasso and Jerry Marshall, testify, but instead produced memoranda they had written to Tucker. Tucker's testimony cast doubt on the validity of the memos. For example, he testified that Jack Ford, an executive for United Exposition's largest client, had complained that Gibson was "socializing and was not doing what he was supposed to be doing" during the client's show. Tucker said that he told Jerry Marshall about Ford's complaint. However, Marshall's memo, allegedly written shortly after his conversation with Tucker, stated that he had no particular incident to speak of regarding Gibson.

The ALJ acknowledged that Gibson was "a temperamental and not an ideal employee or supervisor." Yet, "[o]ver a period of 9 or more years, [United Exposition] was well aware of his condition and never questioned or admonished him about his supervisory conduct." Hence, the ALJ determined that United Exposition failed to prove that it did not reappoint Gibson supervisor because of reasons other than retaliation for strike activities. There is ample evidence showing that Gibson engaged in activities that irritated United Exposition, such as wiggling his ears at an account executive and picketing more than anyone else. Tucker had received complaints about Gibson, but had never stopped appointing Gibson tō supervisory jobs. United Exposition acted against Gibson only after his actions on the picket line.

We conclude that the Board did not err in adopting the ALJ's conclusion that United Exposition failed to rebut General Counsel's prima facie showing of discrimination.

We conclude that there was substantial evidence in the record to support the administrative law judge's findings that Tucker made unlawful statements to Hampton in late January or February of 1989, and that United Exposition violated Gibson's rights by failing to reappoint him to out of town jobs after the September 1988 strike.

## II.

■ United Exposition argues that the administrative law judge and the Board erred in determining that the Act protects Gibson, claiming that it does not apply to the company's treatment of supervisory employees. While this is a correct statement of the law, it is inapplicable here because United Exposition retaliated against Gibson for his activities as an employee, not as a supervisor.

The parties stipulated that Gibson was a statutory supervisor when he performed out of town jobs. United Exposition relies on section 14(a) of the National Labor Relations Act, which states that "no employer subject to this subchapter shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law ... relating to collective bargaining." 29 U.S.C. § 164(a) (1988). The company also cites section 2(3), which provides that the term "employee" shall not include "any individual employed as a supervisor." 29 U.S.C. § 152(3) (1988). Because of Gibson's supervisory assignments, United Exposition argues that Gibson was not protected by the Act.

United Exposition cites *Parker–Robb Chevrolet, Inc.*, 262 N.L.R.B. 402 (1982), *enforced sub nom. Automobile Salesmen's Union v. NLRB*, 711 F.2d 383 (D.C.Cir.1983), for the proposition that an employer does not violate the Act when it discharges a supervisor for engaging in union activities.[2] *Id.* at 404. *Parker–Robb*

---

**2.** There are, however, certain exceptions in which the Act protects supervisors from being

and other cases United Exposition cite are not applicable, however, because they involve supervisors who were discharged for engaging in union activities, and hence, were not entitled to any protection of the Act.

Such is not the case here. Gibson is a regular union employee who has also received out of town supervisory appointments as part of his work. He participated in an economic strike as a union employee—not as a supervisor. His striking activities provoked United Exposition to the point of retaliation against him by ceasing to appoint him as supervisor on out of town assignments. The Act is intended to protect employees from just such retaliation. *See Parker–Robb*, 262 N.L.R.B. at 404–06. The Board and ALJ did not err in ruling that United Exposition violated Gibson's section 8(a)(1) rights by interfering with strike activities he engaged in as a union employee.[3] Gibson's temporary supervisory status on previous out of town assignments does not vitiate his status as a protected employee.

It is not significant that the remedy afforded to Gibson involves his temporary promotion to a position outside the Act's coverage. In *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973), a company discharged an employee for striking activities soon before he was to receive a promotion which would take him out of the Act's protection. The Supreme Court held that, "The Act's remedies are not thwarted by the fact that an employee who is within the Act's protections when the discrimination occurs would have been promoted or transferred to a position not covered by the Act if he had not been discriminated against." *Id.* at 188, 94 S.Ct. at 427 (citation omitted). *See also Oil, Chem. & Atomic Workers Int'l Union v. NLRB*, 547 F.2d 575, 589 (D.C.Cir.1976). *NLRB v. Bell Aircraft Corp.*, 206 F.2d 235, 237 (2d Cir.1953), states that the Act protects a person "so

long as he [holds] a nonsupervisory position, and it is immaterial that the protection afforded [i]s calculated to enable him to obtain a position in which he would no longer be protected." *Id.* at 237.

The Board affirmed the ALJ's rulings, including the characterization of this issue as being the failure to reappoint to a supervisory position. We cannot conclude that the Board erred in this respect. It was while working as a covered employee that Gibson participated in the protected activities, and the fact that United Exposition failed to reappoint him to temporary out of town supervisory positions does not take him out of the coverage of the Act.

 United Exposition further alleges that the Board's Remedial Order calling for backpay and reinstatement is inappropriate and should be vacated. When fashioning a remedy under Section 10(c) of the Act, "the Board draws on a fund of knowledge and expertise all its own, and its choice of remedy must therefore be given special respect by reviewing courts." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 612 n. 32, 89 S.Ct. 1918, 1940 n. 32, 23 L.Ed.2d 547 (1969). "Courts generally defer to the Board's discretion in ordering reinstatement and backpay." *NLRB v. Chem Fab Corp.*, 691 F.2d at 1262. Further, this is not a coerced promotion to a position Gibson never before occupied. *See NLRB v. Ford Motor Co.*, 683 F.2d 156, 159 (6th Cir.1982). We enforce the Board's remedial order.

---

discharged. Because we hold that Gibson is a union employee who received only temporary supervisory assignments, we need not address the issue further.

**3.** Section 8(a)(1) makes it an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158(a)(1) (1988).