**NORTH STAR STEEL COMPANY,
Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

**NORTH STAR STEEL COMPANY,
Respondent,**

**v.**

**NATIONAL LABOR RELATIONS
BOARD, Petitioner.**

Nos. 91–3437, 91–3673.

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1992.

Decided Sept. 1, 1992.

John C. Zwakman, Minneapolis, Minn., argued, for petitioner.

William Baudler, Washington, D.C., argued (Paul J. Spielberg, Michael J. Gan, Jerry M. Hunter, D. Randall Frye and Aileen A. Armstrong, on the brief), for respondent.

Before RICHARD S. ARNOLD, Chief Judge, LAY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

This case arises from North Star Steel Company's (North Star) violation of §§ 8(a)(5) and (1) of the National Labor Relations Act (the Act). The National Labor Relations Board (the Board) found that North Star had violated the Act by unilaterally altering the terms of a company-sponsored health plan which covered certain unionized employees. To remedy this, the Board ordered North Star to return these employees to the status quo that existed prior to the changes and reimburse them for money paid to cover the alterations made to the plan.

North Star appeals, claiming that the make-whole remedy fashioned by the Board is punitive in nature. It argues that had it bargained with the union over the health plan in 1987, the union would have accepted the plan, including periodic contribution adjustments. We enforce the order of the Board.

## I.

The facts of this case are not in dispute. On July 30, 1987, the United Steelworkers of America was certified as the bargaining agent for 24 clerical employees of North Star. The company refused to acknowledge this certification, by failing to recognize and bargain with the union and by filing a complaint with the Board. On July 27, 1988, the Board found that the union's certification was valid, and that North Star had violated §§ 8(a)(5) and (1) of the Act. This ruling was affirmed by the District of Columbia Circuit in December of 1989. The company then began bargaining with the union.

Before the union's certification, North Star maintained a health plan for its employees. Historically, this plan required employees to contribute to the payment of premiums in order to obtain coverage. The plan covered the majority of the employees at the North Star plant, including the 24 unionized clerical workers, and was operated in a fashion that allowed North Star to make unilateral changes in the amount of money the employees needed to contribute to maintain their coverage. This system was continued after the union was certified, even though North Star was challenging that certification and, thus, refusing to bargain.

In early 1990, the union and the company began bargaining. They started with non-economic issues and moved on, after making no headway, to economic issues. In May of 1990, the parties reached a tentative agreement on many of the issues. Included in this agreement was the union's demand for a continuation of the employer's health plan in its current form. This included allowing the employer to continue making unilateral changes to the contribution amounts each year. The agreement was conditioned, however, upon the parties' reaching a final collective-bargaining agreement. In addition, there was evidence which showed that the union's agreement to this proposal represented an effort to stimulate further negotiations on other, more pressing issues. Despite these concessions, however, no final agreement was reached.

After the parties failed to reach an agreement, the union filed an amended complaint with the Board, alleging that North Star had violated §§ 8(a)(5) and (1) of the Act by unilaterally raising the employees' contribution amounts to the health plan during 1988, 1989, and 1990. The case was submitted to an Administrative Law Judge (ALJ) on stipulated facts. North Star conceded that it had committed a tech-

nical violation of § 8(a)(5), but argued that imposing a monetary make-whole remedy was inappropriate because the employees were in the same position that they would have been in had the company bargained with the union when it was originally certified. The ALJ found otherwise, however, ordering North Star to return the employees to the status quo that existed in 1987 and reimburse them for the monetary changes which took place from January of 1988 to July 18, 1990, when the negotiations, according to the ALJ, reached impasse.

On appeal to the Board, the ALJ's decision was affirmed, with the exception of the finding that the negotiations had reached impasse. The Board determined that no impasse had occurred, and that the monetary award should continue to accrue until an agreement was reached or such an impasse occurred. North Star is seeking review as to the remedy only.

## II.

■ In reviewing Board responses to unfair labor practices, the courts have "repeatedly interpreted this statutory command as vesting in the Board the primary responsibility and broad discretion to devise remedies that effectuate the policies of the Act, subject only to limited judicial review." *Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 898–99, 104 S.Ct. 2803, 2812, 81 L.Ed.2d 732 (1984). A court of appeals

> should not substitute [its] judgement for that of the Board in determining how best to undo the effects of unfair labor practices: '[b]ecause the relation of remedy to policy is peculiarly a matter for administrative competence, courts must not enter the allowable area of the Board's discretion and must guard against the danger of sliding unconsciously from the narrow confines of law into the more spacious domain of policy.'

*Id.* at 899, 104 S.Ct. at 2812 (citing *Phelps Dodge Corp. v. N.L.R.B.*, 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941)). In short, "[w]hen fashioning a remedy under § 10(c) of the Act, 'the Board draws on a fund of knowledge and expertise all its

own, and its choice of remedy must therefore be given special respect by reviewing courts.'" *United Exposition Service Company, Inc. v. N.L.R.B.*, 945 F.2d 1057, 1061 (8th Cir.1991) (citing *N.L.R.B. v. Gissel Packing Co.*, 395 U.S. 575, 612 n. 32, 89 S.Ct. 1918, 1939 n. 32, 23 L.Ed.2d 547 (1969)).

■ North Star argues that the Board's remedy exceeds its statutory authority under § 10(c) of the Act because the award is punitive. In support of this claim, North Star points to the tentative agreement reached by the parties in May of 1990. It argues that by agreeing to continue the plan in its present form, the union demonstrated its desire to maintain the status quo on this issue. As a result, a monetary make-whole remedy would be unnecessary, because the employees would have suffered no financial change in position. They would have been subject to the same rate changes even if a collective-bargaining agreement had been reached. The Board disagreed, however, and we see no reason to alter its remedy.

While the tentative agreement indicates that the union may have been amenable to continuing the health plan as it had existed, it certainly cannot be viewed as an iron-clad indicator of how the union would have acted had the company bargained with it over this issue in 1987. Much might have changed over the interim, such as the relative bargaining strengths and weaknesses of the parties. In addition, the union's agreement on the health-plan issue was conditioned upon the signing of a final collective-bargaining agreement. Furthermore, this concession represented an attempt by the union to facilitate negotiations on other, more pertinent issues. In short, this tentative agreement is far from conclusive when one evaluates the status of the parties in 1987. The burden was on the employer to persuade the Board that the union in fact would have continued its agreement with the health plan if the company had kept on bargaining in good faith. It failed to carry this burden.

■ The remedy fashioned by the Board represents a standard response to an un-

fair labor practice finding. To cure unfair labor practices, the Board may fashion a "make whole" remedy which awards the employees monetary damages for money they lost during the period of the violations. In this case, North Star admitted that it violated § 8(a)(5) of the Act when it unilaterally altered the plan. A natural response to this violation is to return to the employees the money they lost through making higher contributions to the plan. This remedy is not punitive. It merely compensates the employees for the money they lost as a result of the unfair labor practices of North Star. We cannot say that this remedy exceeds the Board's authority to address these violations.

The order of the National Labor Relations Board is enforced.